OPINION
{¶ 1} Georgianna Parisi appeals from the trial court's decision and entry awarding her attorney fees, trustee fees, and costs for her work as counsel and trustee for the testamentary trust of Sharon Roe.
 {¶ 2} Parisi advances two assignments of error on appeal. First, she contends the trial court erred in not awarding her all of the fees and expenses she requested. In support she asserts (1) that the trial court erred in applying a 1955 probate case from Cuyahoga County, rather than standards found in the Code of Professional Responsibility, to assess the reasonableness of her attorney fee request and (2) that the trial court erroneously accused her of excessive or improper billing. Second, she claims the trial court erred in blaming her for litigation initiated by a remainderperson and in reducing her fee award as a result.
 {¶ 3} For the reasons set forth below, we find no abuse of discretion in the trial court's ruling on Parisi's fee request. We agree that the applicable standards for judging the reasonableness of an attorney fee request are found in the Code of Professional Responsibility. Although the trial court cited a 1955 probate court case from Cuyahoga County, we believe its analysis adequately encompassed the relevant considerations found in the Code of Professional Responsibility. Moreover, we cannot say that the record fails to support the trial court's concerns about Parisi's billing and litigation-related activities. As a result, her assignments of error will be overruled, and the trial court's judgment will be affirmed.
 I. Background {¶ 4} On March 31, 1993, an individual named Benny Jones executed a will that had been drafted by Parisi. Therein, Jones established three testamentary trusts and named Parisi as trustee of each one. The first trust was created to provide for Jones' "close friend and companion" Sharon Roe. The other two trusts were created to assist his grandchildren, Jennifer Flynn and Nicholas Flynn, with college expenses.[1] Jones' daughters, including appellee Vickie Flynn, were named as remainderpersons under the Sharon Roe trust. Vickie Flynn also was named as the sole remainderperson under the educational trusts established for Jennifer and Nicholas Flynn.
 {¶ 5} Benny Jones died on May 26, 1993. Thereafter, litigation arose when remainderperson Vickie Flynn on several occasions filed exceptions to Parisi's periodic accountings of the trust funds. Vickie Flynn also unsuccessfully moved to have Parisi removed as trustee for incompetence.
 {¶ 6} To facilitate a possible settlement of unresolved issues in the three trusts, on June 14, 2004, Vickie Flynn waived her exceptions to the periodic accountings that Parisi had filed. Two days later, the trial court held a hearing on applications for attorney fees, trustee fees, and costs that Parisi had filed for her work on each of the three trusts.
 {¶ 7} On the issue of attorney fees, trustee fees, and costs in connection with the Sharon Roe trust, Parisi requested "attorney/trustee fees" totaling $70,685 and costs of $8,205.90. In a September 15, 2004, decision and entry, however, the trial court awarded her attorney fees of $8,400, trustee fees of $11,801.21, and costs of $3,351.40. The trial court also noted that Parisi previously had received an additional $4,994.21 for "costs and fees" in connection with the Roe trust. In support of its decision, the trial court relied on standards contained inIn re Estate of Haggerty (1955), 70 Ohio Law Abs. 463, 128 N.E.2d 680, a Cuyahoga County probate court case, to assess the reasonableness of Parisi's "attorney/trustee fee" request. This timely appeal followed.
 II. Analysis {¶ 8} In her first assignment of error, Parisi contends the trial court erred in not awarding her all of the fees and expenses she requested. In support she asserts (1) that the trial court erred in applying Haggerty to assess the reasonableness of her fee request and (2) that the trial court erroneously accused her of excessive or improper billing.
 {¶ 9} On the former issue, Parisi insists that Mont. Co. Probate Rule 71.1 obligated the trial court to assess the reasonableness of her attorney fee request under standards found in the Code of Professional Responsibility.
 {¶ 10} Upon review, we do not dispute Parisi's reading of Mont. Co. Probate Rule 71.1, which provides:
 {¶ 11} "Attorney fees in all matters shall be governed by DR 2-106 of the Code of Professional Responsibility. All attorney fees must be reasonable, and the services rendered must be necessary to the administration of the case. * * *"
 {¶ 12} In turn, DR 2-106(A) states that an attorney shall not charge or collect a "clearly excessive fee," which is defined as being "in excess of a reasonable fee." Under DR 2-106(B), factors to be considered as guides in assessing the reasonableness of a fee include:
 {¶ 13} "(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.
 {¶ 14} "(2) The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.
 {¶ 15} "(3) The fee customarily charged in the locality for similar legal services.
 {¶ 16} "(4) The amount involved and the results obtained.
 {¶ 17} "(5) The tlime limitations imposed by the client or by the circumstances.
 {¶ 18} "(6) The nature and length of the professional relationship with the client.
 {¶ 19} "(7) The experience, reputation, and ability of the lawyer or lawyers performing the services.
 {¶ 20} "(8) Whether the fee is fixed or contingent."
 {¶ 21} Rather than reviewing the foregoing factors to assess the reasonableness of Parisi's fees in the present case, the trial court relied on considerations found in Haggerty, supra, a Cuyahoga County probate court case. In so doing, the trial court stated that "[t]he term `reasonable' means what is fair in view of the size of the estate, the responsibilities involved, the character of the work required, the special problems and difficulties met in doing the work, the results achieved, the knowledge, skill, and judgment and the time and service required, and any other circumstances which may be relevant and material to the determination."
 {¶ 22} Although Parisi argues that the trial court's reliance on the test found in Haggerty constitutes reversible error, we do not agree. Despite the fact that it cited a 1955 probate court case from Cuyahoga County, the trial court's analysis
adequately encompassed the relevant considerations found in Mont. Co. Probate Rule 71.1 and DR 2-106. A review of the trial court's decision and entry reveals that it took into account the considerations set forth in DR 2-106(B)(1), (3), (4), and (8) even though it did not refer to the disciplinary rule itself. As for DR 2-106(B)(2), we are unaware of any evidence that Parisi's work on the Sharon Roe trust precluded other legal employment. Likewise, we find no particular relevance in DR 2-106(B)(5) as the record does not reveal any extraordinary time limitations. Similarly, DR 2-106(B)(6) has little applicability given that Parisi, the attorney, had Parisi, the trustee, for a client. Finally, we note that the trial court did not expressly address "[t]he experience, reputation, and ability of the lawyer or lawyers performing the services," which is a relevant consideration under DR 2-106(B)(7). The record reveals, however, that the trial court was aware of both Parisi's recent certification in this area of the law and her lack of trust administration experience. Thus, we conclude that the trial court sufficiently considered the relevant factors despite its failure to cite Mont. Co. Probate Rule 71.1 or DR 2-106.
 {¶ 23} In opposition to the foregoing reasoning, Parisi argues that the trial court erred in considering the size of the Sharon Roe trust in relation to the amount of fees requested. Parisi insists that DR 2-106 does not allow a trial court to consider the amount of a fee request in relation to the size of a trust when determining whether a fee request is reasonable. We disagree. Under DR 2-106(B)(1) and (B)(4), a trial court may consider both "the time and labor required" (i.e., the amount of a fee request) and "the amount involved" (i.e., the size of the trust). As a result, we see no error in the trial court's assertion that the term "reasonable" includes consideration of "what is fair in view of the size of the estate[.]"
 {¶ 24} In the remainder of her appellate brief, Parisi challenges the trial court's decision to award her only part of the fees that she requested. Under her first assignment of error, she argues that the trial court erred in limiting her fee award due to what it perceived as excessive or improper billing. In her second assignment of error, Parisi contends the trial court erred in limiting her fee award due to what it believed was her role in excessive litigation in this case.
 {¶ 25} Upon review, we find Parisi's arguments to be unpersuasive. "Where the services of an attorney have been employed by a trustee in the course of administering a trust estate, an allowance of reasonable attorney fees as part of the costs and expenses of administration is a matter within the sound discretion of the probate court. Absent an abuse of that discretion, a reviewing court will not interfere with the probate court's decision." National City Bank, Dayton v. Peery (Nov. 8, 1995), Montgomery App. No. 15117; see also Zimmerman v. U.S.Diamond Gold Jewelers, Inc. (March 8, 1995), Montgomery App. No. 14680 (applying an abuse-of-discretion standard to a trial court's attorney fee award based on the factors set forth in DR 2-106).
 {¶ 26} As for the reasonableness of Parisi's billing for her legal work on behalf of the Sharon Roe trust, the record supports the trial court's finding of excessiveness. In its September 15, 2004, decision and entry, the trial court identified instances when Parisi appears to have billed the Sharon Roe trust, the Jennifer Flynn trust, and/or the Nicholas Flynn trust separately for essentially the same legal work. Although Parisi insists that she always apportioned her legal fee between the trusts when her work benefitted more than one of them, the record nevertheless supports the trial court's finding of excessive billing.
 {¶ 27} By way of example, the trial court noted that Parisi had billed the Jennifer and Nicholas Flynn trusts fifteen minutes each on February 17, 1998, for the preparation of nearly identical cover letters and short applications for extensions of time to file an inventory. In addition, the trial court observed that Parisi then had billed the Sharon Roe trust thirty minutes for preparation of virtually the same cover letter and application. The result is a combined bill of $125 for legal work that appears to have been minimal. The trial court also noted that on May 7, 1998, Parisi billed all three trusts for a telephone conference with a Bank One representative in which she requested signed copies of account agreements and obtained investment-related information. On this occasion, she billed the Sharon Roe trust for thirty minutes of legal work, while billing the Jennifer and Nicholas Flynn trusts for fifteen minutes of legal work each. The court found it incredible that Parisi had talked to a Bank One representative for an hour to request forms, discuss the selection of funds, and dictate a memo to her file about the conversation.[2] The trial court next pointed out that Parisi had billed each of the three trusts fifteen minutes for faxing an "EIN application" to the IRS on March 3, 1998, resulting in a combined bill of $93.75 for that simple act. Finally, the trial court noted that Parisi then had billed the Jennifer Flynn and Sharon Roe trusts fifteen minutes each for receiving a message from the IRS and for two unsuccessful attempts to place a telephone call, resulting in a combined bill of $62.50 for this activity.[3] Our own review persuades us that these examples are merely illustrative and far from exhaustive. Consequently, we cannot say that the trial court erred in finding unreasonable billing.
 {¶ 28} Parisi also argues, however, that the trial court erred in limiting her fee award due to what it believed was her role in excessive litigation in this case. More specifically, Parisi suggests that the trial court judge was biased against her and that the judge unfairly blamed her for the exceptions remainderperson Vickie Flynn filed challenging her periodic trust accountings. Parisi asserts that the exceptions were meritless, and she insists that the trial court never found any problems with her accountings.
 {¶ 29} Having reviewed the record, we are unpersuaded by Parisi's arguments. Although she asserts that the trial court judge exhibited bias against her, we note that the Ohio Supreme Court considered her claim and declined to remove the judge from the case. As for the accuracy of Parisi's accountings, it is true that the trial court judge never filed a decision finding the exceptions to be meritorious. Nevertheless, the record persuades us that the exceptions, which ultimately were dismissed to facilitate a settlement in the case, did have at least some merit. During an October 5, 2001, hearing on the issue, the trial court found, and Parisi herself repeatedly conceded, the existence of errors in her accountings. At one point, the trial court declared that "the continued mistakes show an inability to account appropriately to the remaindermen or to the court; that there has been shown a continuous casual accounting practices [sic] of making mistakes, correcting mistakes, creating figures, to adjusting them to make things balance." (October 5, 2001, transcript at 4). In response to one set of exceptions, Parisi acknowledged a series of mistakes, stating: "We — I did make a mistake and when that mistake was pointed out to me I corrected it and filed a Supplemental Account, but that is correct" (Id. at 12); "I will acknowledge the mistake and I will do what I need to do to repair it" (Id. at 14); "It is — we did make a mistake" (Id. at 17); "I made a mistake. I acknowledge I made a mistake" (Id. at 19); "I imagine some mistakes, but many of them have been errors, and when they've been pointed out to us we've corrected them" (Id. at 22-23). Parisi also conceded that she apparently had created a false "market loss" figure in order to make her accounting balance correctly. (Id. at 16-20).
 {¶ 30} The bottom line is that the trial court believed Parisi performed too much work on a small trust and engaged in excessive litigation, due in part to her own accounting errors. The trial court also found that Parisi spent too much time performing relatively simple tasks, did a sizeable amount of work that was of little or no value to the beneficiary, and on many occasions billed the Jennifer Flynn trust, the Nicholas Flynn and/or Sharon Roe trusts separately for essentially the same legal work. Having reviewed the record, we cannot say that the trial court abused its discretion in reaching these conclusions and in making the fee award that it did.
 {¶ 31} In finding no abuse of discretion in the trial court's fee award, we note too that Parisi has failed to segregate her trustee fees from her attorney fees in her time records and fee applications. Although she asserts that "it is not customary in this locality to do so," such segregation is mandated by Mont. Co. Probate Rule 71.1(E), which provides: "In cases where the attorney is also the guardian or trustee, the attorney shall set forth the time expended as both the guardian and attorney, and the application shall be evaluated for the reasonableness of both fees." Parisi's failure to follow the mandate of Mont. Co. Probate Rule 71.1(E) makes it extremely difficult for this court to evaluate the reasonableness of the trial court's fee award. It appears to us that a sizeable amount of the work for which she billed attorney fees would fall within the scope of tasks typically performed by a trustee.[4] While Parisi offered to waive her trustee fees to ameliorate any problem, such a remedy is inadequate. Even if Parisi waived her trustee fees, the fact remains that she appears to have billed some trustee work as attorney work. This is significant because her hourly attorney-fee rate is substantially higher than the fees available to a trustee for the administration of a relatively small trust. The record reflects that Parisi billed at rates of $125 to $200 per hour for her attorney fees. To the extent that this billing included work more properly characterized as trustee work, Parisi's bill is excessive. Given her failure to segregate the more than one-hundred pages of billing records in this case, as required by Mont. Co. Probate Rule 71.1, this court cannot readily determine the extent of the excessiveness. In any event, it is the responsibility of Parisi, and not this court or the trial court, to segregate her attorney work and her trustee work. For this additional reason, we cannot say that the trial court abused its discretion in awarding her the fees that it did. Parisi's first and second assignments of error are overruled.
 III. Conclusion {¶ 32} Having overruled Parisi's two assignments of error, we hereby affirm the judgment of the Montgomery County Court of Common Pleas, Probate Division.
Judgment affirmed.
Wolff J., and Grady, J., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District, Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio).
[1] The Jennifer Flynn trust is the subject of two related appeals that have been consolidated for resolution in a separate decision and entry.
[2] A possibly more troubling question is why Parisi's conversation with a Bank One representative regarding investment forms and investment advice should be billed as attorney work at all. In her appellate brief, Parisi explains that the purpose of the conversation was to discuss "the selection of funds for each of the [t]rusts" and to review "proposed investments and prospectuses[.]" This is precisely the type of activity that we would anticipate a trustee performing without the assistance of legal counsel. We will discuss this issue more fully, infra.
[3] The trial court also noted that Parisi had billed the Sharon Roe trust for a number of expenses that were incurred solely for her own convenience and that had no apparent value to the trust or its beneficiary. For example, the trial court noted that she had billed for at least fifteen requests for extensions of time at a cost of $1,527 in attorney fees, and had sought reimbursement for $585 in "runner's fees" for having items delivered rather than mailing them.
[4] See, e.g., footnote two, supra.