[Cite as *State v. Ramey*, 2021-Ohio-1522.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2020-CA-55 |
| | : | |
| v. | : | Trial Court Case Nos. 2014-CR-415 |
| | : | |
| CAMERON RAMEY | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 30th day of April, 2021.

. . . . . . . . . . .

IAN RICHARDSON, Atty. Reg. No. 0100124, Assistant Prosecuting Attorney, Clark County Prosecutor's Office, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
    Attorney for Plaintiff-Appellee

REGINA ROSEMARY RICHARDS, Atty. Reg. No. 0079457, 202 Scioto Street, Urbana, Ohio 43078
    Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Defendant-appellant, Cameron Ramey, appeals from a judgment of the Clark County Court of Common Pleas, which denied his petition for post-conviction relief without an evidentiary hearing. For the reasons outlined below, the judgment of the trial court will be affirmed.

## Facts and Course of Proceedings

**{¶ 2}** On April 8, 2014, a jury found Ramey guilty of complicity to improperly discharging a firearm at or into a habitation, complicity to felonious assault, improperly handling a firearm in a motor vehicle, and tampering with evidence with an attendant firearm specification. He was convicted and sentenced accordingly. Ramey's convictions stemmed from his involvement in a drive-by shooting at the residence of Anthony Walker. The evidence presented at trial established that Ramey and Walker and their respective groups of friends had an ongoing feud due to the shooting death of Walker's best friend, Jeff Wellington. The evidence also established that on June 12, 2014, Ramey's cousin, Akeem Freeman, drove by and fired shots at Walker's residence while Ramey drove closely behind in another vehicle and sped away after the shots were fired. The evidence further established that Ramey communicated with Freeman shortly before the shooting, picked up Freeman in his vehicle shortly after the shooting, and permitted Freeman to leave the firearm that was used during the shooting in his vehicle.

**{¶ 3}** During sentencing, the trial court imposed three years in prison for complicity to improperly discharging a firearm, eight years for complicity to felonious assault, one year for improperly handling a firearm in a motor vehicle, three years in prison for tampering with evidence, and one year in prison for the accompanying firearm

specification. The trial court ordered all of the prison terms to be served consecutively for an aggregate term of 16 years in prison.

{¶ 4} Ramey appealed from his conviction. In support of his appeal, Ramey argued that the State had made improper statements during closing argument. Ramey also argued that his convictions for complicity to improperly discharging a firearm and complicity to felonious assault were not supported by sufficient evidence and were against the manifest weight of the evidence. Ramey further argued that the trial court erred by failing to merge allied offenses at sentencing and by imposing maximum, consecutive prison sentences. On appeal, we overruled all of Ramey's arguments and affirmed his conviction. *State v. Ramey*, 2015-Ohio-5389, 55 N.E.3d 542 (2d Dist.).

{¶ 5} On December 23, 2019, four years after we affirmed Ramey's convictions, Ramey filed a petition for post-conviction relief in the trial court. In the petition, Ramey requested that the trial court grant him a hearing to determine whether his conviction should be vacated for a violation of due process on grounds that Walker recanted his trial testimony. At trial, Walker testified that he saw Ramey driving by his house at the time of the shooting. Ramey's petition included an affidavit prepared by Walker on October 8, 2019, recanting that testimony and stating the following:

> At the time of the incident I did not know who the suspect actually was, I thought I might know who the suspect was, but I did not get a visual on the person. Mr. Ramey, and I, had our differences at the time, so I thought it might have been him. But I was not [sure].
>
> When I was questioned by the detective I brought this to his attention, they practically made me say that I knew it was him. I was scared of going

to prison, and I was offered immunity to get myself out of trouble. And so I did just that.

Mr. Ramey is wrongfully convicted, and after seeing what prison is like I cannot stand on my Honor and know that a man is innocent and is imprisoned.

Petition for Post-Conviction Relief, Exhibit A (Dec. 23, 2019).

{¶ 6} In his petition for post-conviction relief, Ramey also requested that the trial court grant him a hearing to determine whether he was denied equal protection of the law due to race-based sentencing disparity. In support of this claim, Ramey pointed to a sentencing decision in *State v. Heizer*, Montgomery C.P. No. 2017-CR-2286,[1] which was issued six months prior to Ramey's filing his petition for post-conviction relief. Ramey claimed that *Heizer* involved a similar incident of gun violence between high-school aged youths, as the defendant in *Heizer* drove a vehicle in which one of the passengers shot and killed a 16-year-old boy. Ramey argued that the defendant in *Heizer*, who had a prior criminal record and whose victim died, only received a two-year prison sentence, while Ramey, who had no prior criminal record and whose victim was not physically

---

[1] We note that Ramey's petition asserted that the defendant in *Heizer* was sentenced to two years in prison for felonious assault in Montgomery C.P. No. 2016-CRA-542. Ramey, however, cited the wrong case number, as the court docket indicates that the felonious assault conviction was in Montgomery C.P. No. 2016-CR-798. Not only did Ramey cite the incorrect case number, but the docket indicates that the felonious assault conviction stemmed from an incident where Heizer assaulted a man with a baseball bat, not from the incident of gun violence that Ramey claimed was similar to his case. The case involving the incident of gun violence was Montgomery C.P. No. 2017-CR-2286, in which Heizer was sentenced to two years in prison for tampering with evidence, assault, aggravated menacing, and contributing to the delinquency of a minor. Ramey's appellate brief cites Case No. 2017-CR-2286 when discussing his equal-protection claim. Thus, we presume this is the case on which his equal protection claim is actually based.

injured, was sentenced to 16 years in prison. Ramey's petition suggested that the sentencing disparity was race-based because Heizer is white and Ramey is black.

{¶ 7} The petition also requested that the trial court reconsider its decision to impose maximum, consecutive prison sentences. Although Ramey conceded that the trial court made all the required consecutive-sentence findings under R.C. 2929.14(C)(4), Ramey argued that the record did not support those findings. Ramey also argued that his individual prison sentences did not comport with the purposes and principles of felony sentencing in R.C. 2929.11 and did not appropriately reflect the seriousness and recidivism factors in R.C. 2929.12.

{¶ 8} On September 15, 2020, the trial court denied Ramey's petition for post-conviction relief without a hearing on grounds that it was untimely and barred by the doctrine of res judicata. Ramey now appeals from the trial court's decision denying his petition, raising a single assignment of error for review.


**Assignment of Error**

{¶ 9} Under his assignment of error, Ramey contends that the trial court erred by denying his request for a hearing on his petition for post-conviction relief. Ramey also claims that the trial court erred in finding that the claims in his petition were untimely and barred by the doctrine of res judicata. We disagree.

{¶ 10} R.C. 2953.21(A)(1)(a) provides that "[a]ny person who has been convicted of a criminal offense * * * and who claims that there was such a denial or infringement of the person's rights as to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States * * * may file a petition in the court that imposed

sentence, stating the grounds for relief relied upon, and asking the court to vacate or set aside the judgment or sentence or to grant other appropriate relief." The statute further provides that the "petitioner may file a supporting affidavit and other documentary evidence in support of the claim for relief." R.C. 2953.21(A)(1)(a).

{¶ 11} When, as in this case, a direct appeal from a conviction has been taken, a petition for post-conviction relief must be filed no later than 365 days after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction. R.C. 2953.21(A)(2). A trial court lacks jurisdiction to consider an untimely petition for post-conviction relief unless the untimeliness is excused under R.C. 2953.23(A). *State v. Current*, 2d Dist. Champaign No. 2012-CA-33, 2013-Ohio-1921, ¶ 16, citing *State v. Johnson*, 2d Dist. Montgomery No. 24775, 2012-Ohio-2542, ¶ 11. (Other citations omitted.)

{¶ 12} "Pursuant to R.C. 2953.23(A)(1)(a), a defendant may not file an untimely or successive petition for post-conviction relief unless (1) the defendant was unavoidably prevented from discovering the facts upon which he or she relies to present the claim, or (2) the United States Supreme Court recognizes a new federal or state right that applies retroactively to his or her situation and the petition asserts a claim based on that right." *State v. Baker*, 2d Dist. Montgomery No. 27596, 2017-Ohio-8602, ¶ 13. "The petitioner must also show by clear and convincing evidence that, if not for the constitutional error from which he suffered, no reasonable factfinder would have found him guilty." *Id.*, citing R.C. 2953.23(A)(1)(b).

{¶ 13} "The post-conviction relief statutes do 'not expressly mandate a hearing for every post-conviction relief petition and, therefore, a hearing is not automatically

required.' " *State v. Mackey*, 2d Dist. Clark No. 2014-CA-68, 2015-Ohio-899, ¶ 10, quoting *State v. Jackson*, 64 Ohio St.2d 107, 110, 413 N.E.2d 819 (1980). "[I]n addressing a petition for post-conviction relief, a trial court plays a gatekeeping role as to whether a defendant will receive a hearing." *Id.*, citing *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 51. "When a trial court lacks jurisdiction to consider an untimely petition, it is not necessary for the court to hold an evidentiary hearing on that petition." *Current* at ¶ 22, citing *Johnson* at ¶ 18.

{¶ 14} "This court reviews the denial of a petition for post-conviction relief for which no hearing was held under an abuse-of-discretion standard." *State v. Crossley*, 2d Dist. Clark No. 2020-CA-10, 2020-Ohio-6640, ¶ 17, citing *State v. Harden*, 2d Dist. Montgomery No. 23617, 2010-Ohio-3343, ¶ 10. "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." (Citation omitted.) *State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34. An abuse of discretion most often involves an unreasonable decision that is not supported by a sound reasoning process. *Mackey* at ¶ 11, citing *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶ 15} In this case, there is no dispute that Ramey's petition for post-conviction relief was untimely, as Ramey filed the petition 1,750 days after the trial transcript was filed in his direct appeal. Ramey, however, asserts that the untimeliness of his petition should have been excused because he was unavoidably prevented from discovering the claims on which his petition was based. As previously noted, Ramey claimed that he was denied due process at trial based on Walker's recanting his testimony that he saw

Ramey drive by his house at the time of the shooting. Ramey also claimed that he was denied equal protection of the law based on race-based sentencing disparity. Ramey further requested that the trial court reconsider its imposition of maximum, consecutive prison sentences. We will address each of these claims separately.

*Walker's Recantation*

{¶ 16} Even if we were to find that the timing of Walker's 2019 recantation prevented Ramey from timely raising the due process claim in his petition, and even if we were to accept Walker's recantation as being true, Ramey has not clearly and convincingly established that the jury would not have found him guilty had Walker testified truthfully. This is because there was plenty of other evidence supporting Ramey's conviction. For instance, in Ramey's direct appeal, we summarized the evidence that supported Ramey's conviction for complicity to improperly discharging a firearm and complicity to felonious assault, stating the following:

While Ramey testified that he had no knowledge that Freeman was going to shoot at [Walker's] residence nor assisted Freeman in the shooting, we conclude there was sufficient circumstantial evidence for a rational finder of fact to conclude otherwise. First, it can be inferred from the evidence that Ramey had reason to seek revenge against Walker. Not only were Walker and Ramey members of feuding groups in the wake of the shooting death of Walker's best friend, but Ramey testified that Walker fired the shot that hit him in the head on Memorial Day, which was only sixteen days before the drive-by shooting in question.

More importantly, a rational finder of fact could infer from the evidence that Ramey had a role in the drive-by shooting based on his actions before, during, and after the shooting. Both Walker and his mother saw Ramey drive by Walker's house just hours prior to the shooting, and Walker saw Ramey drive by on more than one occasion. Ramey also posted a message on his Twitter account eight hours before the shooting that was arguably directed at Walker since it said "[s]hoot me again try yo luck[,]" and Ramey identified Walker as the one who shot him on Memorial Day. The message was also resent by Deaerius McWhorter, who Walker claimed he saw in the SUV with Ramey during the shooting.

Moreover, Ramey admitted that he was following Freeman's vehicle at the time of the shooting and multiple witnesses saw that Ramey's green SUV was following closely behind the white vehicle. Walker's neighbor, Sherry Miller, even testified that the two vehicles were clearly moving together. Miller also testified that after the shooting, the two vehicles went to the end of the block and turned in the same direction.

Furthermore, Ramey testified that he and Freeman had communicated with each other at the end of his graduation ceremony, which concluded just 30 minutes prior to the shooting. Ramey also admitted to picking Freeman up after the shooting and allowing him to put the gun in the glove box of his SUV. Finally, expert testing verified that the gun in the glove box was the same gun that was used in the shooting. Ramey testified that he permitted Freeman to leave the gun in his glove box despite

knowing it was evidence of a crime.

Taken together, Ramey's feud with Walker, his presence at the scene of the shooting, his companionship with Freeman, and his conduct before, during, and after the shooting, would permit a rational finder of fact to infer that Ramey knowingly aided and abetted the principal offenses of improperly discharging a firearm into a habitation and felonious assault. Although much of the evidence against Ramey is circumstantial, circumstantial evidence and direct evidence are of equal value, especially because some facts can only be proved by circumstantial evidence. *State v. Jackson*, 2d Dist. Montgomery No. 24430, 2012-Ohio-2335, ¶ 129, citing *State v. Jenks*, 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991). Therefore, because the aforementioned evidence would permit a rational trier of fact to infer that Ramey did knowingly aid and abet Freeman in improperly discharging a firearm at or into a habitation and in committing felonious assault, we find there was sufficient evidence of complicity to commit those principal offenses.

*Ramey*, 2015-Ohio-5389, 55 N.E.3d 542, at ¶ 56-60.

**{¶ 17}** Therefore, absent Walker's testimony that he saw Ramey drive by at the time of the shooting, there remained ample evidence from which the jury could have found Ramey guilty of both complicity to improperly discharging a firearm at or into a habitation and complicity to felonious assault.

**{¶ 18}** As to Ramey's conviction for improperly handling a firearm in a motor vehicle, Ramey was charged under R.C. 2923.16(B), which prohibits knowingly

transporting or having a loaded firearm in a motor vehicle in such a manner that the firearm is accessible to the operator or any passenger without leaving the vehicle. At trial, an investigating police officer testified that on the night of the shooting, the officer made contact with Ramey at a gas station after observing Ramey driving a vehicle that matched the description of one of the vehicle's involved in the shooting. The officer testified that Ramey gave him consent to search the vehicle and that the search yielded a loaded handgun in the glove box. Ramey's own testimony also indicated that Ramey had knowledge of the handgun, as Ramey testified that he allowed Freeman to leave the gun in his vehicle. Walker's recantation did not affect the foregoing testimony and thus did not affect Ramey's conviction for improperly handling a firearm in a motor vehicle.

{¶ 19} Regarding Ramey's conviction for tampering with evidence and the associated firearm specification, Ramey was charged under R.C. 2921.12(A)(1), which prohibits concealing an item with the purpose to impair its value or availability as evidence while knowing an official proceeding or investigation is in progress or likely to be instituted. At trial, Ramey testified that he was driving behind Freeman's vehicle when Freeman fired shots at Walker's residence; therefore, Ramey knew a criminal offense had occurred. Despite this, Ramey testified that he later picked Freeman up at his house and allowed Freeman to store his handgun in the glove box of his vehicle. The handgun was tested by forensic experts and confirmed to be the handgun used during the drive-by shooting at Walker's residence. Walker's recantation did not affect Ramey's testimony or the forensic evidence, and thus did not affect Ramey's conviction for tampering with evidence and the associated firearm specification.

{¶ 20} For the foregoing reasons, Ramey did not satisfy the requirement under

R.C. 2953.23(A)(1)(b) that he show by clear and convincing evidence that no reasonable factfinder would have found him guilty of the convicted offenses and firearm specification had Walker testified truthfully about what he saw during the shooting. Therefore, it was appropriate for the trial court not to excuse the untimeliness of Ramey's petition as to the due process claim. Accordingly, the trial court lacked jurisdiction over the matter and no evidentiary hearing was required.

*Equal-Protection Claim*

{¶ 21} As previously noted, Ramey's equal-protection claim, which alleges race-based sentencing disparity, relies on a sentencing decision that was issued by the Montgomery County Court of Common Pleas six months before Ramey filed his petition for post-conviction relief—*State v. Heizer*, Case No. 2017-CR-2286. Even if we were to find that Ramey was unavoidably prevented from timely raising his equal-protection claim due to the timing of the sentencing decision in *Heizer*, Ramey has not clearly and convincingly established a constitutional error affecting his conviction.

{¶ 22} R.C. 2953.21(A)(5) provides that if a petitioner filing a petition for post-conviction relief "was convicted of or pleaded guilty to a felony, the petition may include a claim that the petitioner was denied the equal protection of the laws in violation of the Ohio Constitution or the United States Constitution because the sentence imposed upon the petitioner for the felony was part of a consistent pattern of disparity in sentencing by the judge who imposed the sentence, with regard to the petitioner's race, gender, ethnic background, or religion." Therefore, this section of the statute provides "an opportunity for prisoners to allege an equal-protection violation when their sentence 'was part of a

consistent pattern of disparity in sentencing' regarding the petitioner's 'race, gender, ethnic background, or religion.' "  *State v. Cowan*, 101 Ohio St.3d 372, 2004-Ohio-1583, 805 N.E.2d 1085, ¶ 17, quoting R.C. 2953.21(A)(5).

{¶ 23} In *State v. Murphy*, 5th Dist. Coshocton No. 02-CA-13, 2003-Ohio-128, a petitioner alleged an equal-protection violation by contrasting the felony sentences he and two other black defendants received on an aggregate tally of seven drug trafficking convictions, versus the felony sentences received by three white defendants on an aggregate tally of 45 convictions, mostly related to theft.  *Id.* at ¶ 8.  According to the petitioner's calculations, the three black defendants received a total of 25 years in prison, while the three white defendants received a total of less than 11 years in prison on a greater number of counts.  *Id.*  The sentences received by the black defendants were all for drug trafficking or possession while the white defendants' sentences were almost exclusively for theft with a firearm, burglary, and forgery.  *Id.*

{¶ 24} The appellate court in *Murphy* found that the petitioner's equal-protection claim was based on six different sets of crimes involving six different individuals with divergent criminal histories and backgrounds.  *Id.*  Given that "the Equal Protection Clauses of both the Ohio and United States Constitutions protect 'similarly situated' persons from being treated differently by the government," the court in *Murphy* held that the petitioner's claim "failed to meet the initial constitutional threshold"  *Id.*, citing *State ex rel. Riter v. Indus. Comm.*, 91 Ohio St.3d 89, 742 N.E.2d 615 (2001).  Accordingly, the court in *Murphy* held that it was not an abuse of discretion for the trial court to deny the post-conviction petition without an evidentiary hearing.  *Id.* at ¶ 9.

{¶ 25} Likewise, in *State v. Liles*, 3d Dist. Allen No. 1-16-33, 2017-Ohio-240, the

Third District Court of Appeals explained that:

"It is well-established that the Equal Protection Clauses of both the Ohio and United States Constitutions protect 'similarly situated' persons from being treated differently by the government." [*Murphy* at ¶ 8, citing *State ex rel. Riter*]. "[I]t is a basic and generally applicable principle of Fourteenth Amendment equal protection analysis that a party claiming an equal protection violation has the burden of proving purposeful discrimination." *State v. Keene*, 81 Ohio St.3d 646, 654 (1998), citing *McClesky v. Kemp*, 481 U.S. 279, 292, 107 S.Ct. 1756 (1987), quoting *Whitus v. Georgia*, 385 U.S. 545, 550, 87 S.Ct. 643 (1967). "A corollary to this principle is that a criminal defendant must prove that the purposeful discrimination 'had a discriminatory effect' on him." *McCleskey* at 292, quoting *Wayte v. United States*, 470 U.S. 598, 608, 105 S.Ct. 1524 (1985). In the context of an argument involving race-based sentencing disparity, "rather than make a general showing of disparity, a defendant ' "must show that racial considerations affected the sentencing process *in his case* " ' for equal protection to be implicated." (Emphasis sic.) *State v. Frazier*, 6th Dist. Lucas No. L-07-1388, 2008-Ohio-5027, ¶ 67, quoting *State v. Skatzes*, 2d Dist. Montgomery No. 15848, 2003-Ohio-516, ¶ 395, quoting *State v. Steffen*, 31 Ohio St.3d 111, 124 (1987).

*Liles* at ¶ 17.

{¶ 26} In this case, Ramey attempted to establish race-based sentencing disparity by pointing to a single sentencing decision issued by the Montgomery County Court of

Common Pleas in *Heizer*, Case No. 2017-CR-2286.   Despite any underlying similarities between Ramey's case and *Heizer*, the fact remains that the defendant in *Heizer* was convicted of different offenses.   Although Ramey and Heizer were both convicted of tampering with evidence, Heizer's tampering with evidence offense included a firearm specification while Heizer's did not.   Heizer was also convicted of fifth-degree-felony aggravated menacing, first-degree-misdemeanor assault, and first-degree-misdemeanor contributing to the delinquency of a minor.   Ramey, on the other hand, had a much greater sentencing exposure.   In addition to his conviction for third-degree-felony tampering with evidence with a firearm specification, Ramey was convicted of two second-degree felonies (complicity to discharging a firearm at or into a habitation and complicity to felonious assault) and one fourth-degree felony (improperly handling a firearm in a motor vehicle).   Therefore, Ramey and the defendant in *Heizer* were not "similarly situated" so as to support an equal-protection claim.   Moreover, the fact that Ramey pointed to a single case in Montgomery County wherein a white defendant received a less severe sentence than him does not demonstrate "a consistent pattern" of race-based sentencing disparity by the Clark County judge who imposed Ramey's sentence.   *See* R.C. 2953.21(A)(5).   Simply put, Ramey's petition failed to demonstrate that race-based considerations affected the sentencing process in his case.   Therefore, Ramey's petition for post-conviction relief did not assert a cognizable equal-protection claim that would have warranted a hearing.

*Maximum, Consecutive Sentences*

{¶ 27} Finally, the arguments made in support of Ramey's request to have the trial

court reconsider its decision to impose maximum, consecutive sentences could have been raised in Ramey's direct appeal. We note that Ramey specifically challenged the trial court's imposition of maximum, consecutive sentences in his direct appeal, and we found no error with regard to the trial court's sentencing decision. *See Ramey*, 2015-Ohio-5389, 55 N.E.3d 542, at ¶ 81-92. Therefore, the sentencing arguments raised in Ramey's petition are barred by the doctrine of res judicata. *See State v. Dixon*, 2d Dist. Montgomery No. 27991, 2019-Ohio-230, ¶ 17, quoting *State v. Jennison*, 5th Dist. Coshocton No. 2015-CA-0003, 2015-Ohio-3204, ¶ 9 (" 'When a petitioner seeks post[-]conviction relief on an issue that was raised or could have been raised on direct appeal, the petition is properly denied by the application of the doctrine of res judicata.' ").

{¶ 28} For the foregoing reasons, Ramey's sole assignment of error is overruled.

## Conclusion

{¶ 29} Having overruled Ramey's assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

TUCKER, P.J. and DONOVAN, J., concur.

Copies sent to:

Ian Richardson
Regina Rosemary Richards
Hon. Douglas M. Rastatter