[Cite as *In re Testamentary Trust of Jones*, 2025-Ohio-1678.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

IN THE MATTER OF THE
TESTAMENTARY TRUST OF
BENNY JONES, DECEASED F/B/O
SHARON ROE

:
:
:
:
:
:
:
:
:
:

C.A. No. 30295

Trial Court Case No. 1997 TRS 318527

(Appeal from Common Pleas Court-
Probate Division)

. . . . . . . . . . .

O P I N I O N

Rendered on May 9, 2025

. . . . . . . . . . .

GEORGIANNA PARISI, Pro Se Appellant

. . . . . . . . . . . .

EPLEY, P.J.

{¶ 1} Georgianna Parisi, trustee of the testamentary trust of Benny Jones for the benefit of Sharon Roe, appeals from the trial court's denial of her (1) motion for documents or, in the alternative, continuance; (2) motion for special process server; and (3) amended motion for trustee fees. For the following reasons, the trial court's judgment will be

affirmed.

## I. Facts and Procedural History

{¶ 2} On March 31, 1993, Benny Jones executed a will that had been drafted by Parisi. The will established three testamentary trusts, one of which was created to provide for Jones's "close friend and companion" Sharon Roe. *See In re Testamentary Trust of Roe*, 2005-Ohio-4033, ¶ 4 (2d Dist.). Jones named Parisi as trustee of each trust, and she was appointed trustee for the trusts following Jones's death in May 1993. Parisi was the trusts' attorney until 2013, when her law license was registered as inactive. Parisi hires others to prepare the partial accounts and the annual tax returns for the trust.

{¶ 3} Roe passed away in March 2023. In April 2024, Parisi filed the 25th partial account for the Trust of Sharon Roe, which covered the period from January 1, 2023, to December 31, 2023. That partial account was approved on June 25, 2024.

{¶ 4} On July 27, 2024, Parisi filed an "amended motion for trustee fees," seeking ordinary and extraordinary trustee fees in the amount of $6,282.50 (35.9 hours x $175/hour). She indicated that she would be willing to accept $5,385 (35.9 hours x $150/hour) if the motion were resolved without a hearing and testimony.

{¶ 5} In her motion, Parisi claimed that her equal protection rights were violated, because corporate trustees were able to receive a larger trustee fee than individual trustees for similarly-sized trusts under the Montgomery County Probate Court Trustee Fee Appendix. She further claimed that it was a violation of her due process rights to require individual trustees to base their fees on an Appendix when there was "no other

means for the individual Trustees to calculate their fees, such as is afforded to corporate trustees which simply post their fee schedules with the court."

{¶ 6} Parisi attached several documents to her motion: (1) an itemized statement of her services as trustee from July 21, 2022 to April 21, 2024 (Exhibit A); (2) documents related to three other trusts to show what trustee fees were taken there and what those bank trustees would have received under the Appendix (Exhibits B-G); (3) examples of how three other counties calculate trustee compensation (Exhibits H-J); (4) documents from another trust where the attorney/trust sought attorney fees at $240 per hour (Exhibit K); and (5) statements from two of the Sharon Roe Trust beneficiaries, consenting to Parisi's fee request.

{¶ 7} A hearing on Parisi's motion was originally scheduled for August 29, 2024, but rescheduled to September 24, 2024, at her request. Approximately two weeks before the hearing date, Parisi sought the appointment of a special process server.

{¶ 8} A week later, Parisi filed a motion for documents or, alternatively, a continuance. She explained that she had tried to obtain copies of trustee fee appendices, but starting in 2023, those appendices were not imaged on the probate court's online dockets, and she was unable to view them when she went to the clerk's office. Parisi had sought those records through a Freedom of Information Act (FOIA) request. She also stated that she "believed it would be helpful to the Court for trustees from banks and individual trustees to testify as to their duties and what services they provide, and why they charge . . . the trustee fees they do." She indicated that she had been unable to subpoena any witnesses, however, because her request for a special

process server had not yet been ruled upon.

{¶ 9} The hearing proceeded on September 24, as scheduled, with Parisi as the sole witness. The court first orally denied Parisi's FOIA request for trustee fee appendices, saying that she needed to provide the court with specific case numbers, dates, and notations on the docket to locate the requested records.

{¶ 10} The court then asked Parisi for an overview of the trust, including how it came about, the number of beneficiaries, when the trust terminates, and its current status. Parisi responded to the court's questions on these matters.

{¶ 11} Before turning to the motion for trustee fees, Parisi orally requested a continuance so that she could obtain witnesses related to the disparity between what banks and individual trustees could charge for the same work for the same types of trusts. Parisi stated that she wanted to bring in bank trustees to testify to "what they actually do as a trustee for the bank trust." She stated that these were fact witnesses, not experts, and that the anticipated testimony would be unrelated to the Trust of Sharon Roe. The trial court orally denied the motion for a continuance, ruling that "[y]ou can't bring in a lay witness to give expert opinion that's unrelated to the facts of the case." Tr. 14. When Parisi reiterated that the witness would be a fact witness, not an expert, the court stated that it "wouldn't allow that" and that it was not permitted by the Rules of Evidence. As a result of this ruling, the request for a process server was also denied.

{¶ 12} Parisi then argued that having different fee processes for individual trustees and corporate trustees violated equal protection and due process. She stated that "banks were able to charge much higher rates based upon whatever they charge their

inter vivos folks as long as the trust was over $75,000." Parisi also pointed out that Cuyahoga, Clermont, and Hamilton Counties permit much higher trustee fees than the Montgomery County Appendix. She stated that her calculated fee under the Appendix was $1,619.35.

{¶ 13} Finally, Parisi argued to the court that part of her trustee work justified extraordinary trustee fees. Specifically, she noted that cutting checks for Roe's long-term care was extraordinary, because "it was never requested before, and I needed to put together a lot of the costs and that kind of thing and what they needed. I wouldn't consider that ordinary." She also stated that contacting a certified public accountant for a beneficiary who wanted an in-kind distribution rather than cash constituted extraordinary work. Parisi characterized her work in managing the trust's investments as ordinary trustee work. Parisi's itemized statement of her trustee work was admitted into evidence.

{¶ 14} On September 27, 2024, the trial court issued a written entry denying Parisi's motions. As for the motions for documents or, alternatively, a continuance and for a special process server, the court found that "examples of trustee compensation in wholly unrelated matters is not relevant to this matter as each trust administration is different and non-reflective of the current trust administration." It further found that "the appointment of a special process server to secure the attendance of a bank employee is not necessary as such person, as admitted by Trustee, cannot be qualified as an expert witness to provide testimony relevant to the specific administration of this trust."

{¶ 15} As for the motion for trustee fees, the trial court noted that the itemized statement provided by Parisi included work performed in 2022 and 2023 for which Parisi

had already been compensated, according to the 24th and 25th partial accounts. The court rejected Parisi's contention that she had performed extraordinary services during that time period. The court concluded: "Trustee has already been compensated for her ordinary services in prior account periods. As to trustee services provided in 2024, Trustee shall account for her trustee fees in the next Partial or Final account." The trial court did not address Parisi's equal protection argument.

{¶ 16} Parisi appeals from the trial court's judgment, raising three assignments of error. We will address them in a manner that facilitates our analysis

## II. Parisi's Witnesses and Constitutional Argument

{¶ 17} In her first assignment of error, Parisi challenges the trial court's denial of her request to subpoena bank trustees to testify as fact witnesses. Her second assignment of error claims that the trial court erred when it failed to address her equal protection argument.

{¶ 18} "The admission or exclusion of evidence rests within the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of that discretion." *State v. Malloy*, 2011-Ohio-30, ¶ 64, (2d Dist.). "A trial court abuses its discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary." (Citation omitted.) *State v. Darmond*, 2013-Ohio-966, ¶ 34.

{¶ 19} When engaging in this gatekeeper capacity with respect to the admission of evidence, the trial court must determine if potential evidence is relevant. To be relevant, evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be

without the evidence." Evid.R. 401. In other words, there must be some probative value to the evidence. Generally, relevant evidence is admissible. Evid.R. 402. However, even if evidence is relevant, it can become inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or of misleading the jury. Evid.R. 403(A); *State v. Dennis*, 2022-Ohio-2888, ¶ 27 (2d Dist.). Evidence that is not relevant is not admissible. Evid.R. 402; *State v. Stone*, 2024-Ohio-177, ¶ 33 (2d Dist.).

{¶ 20} Parisi sought to subpoena and call witnesses to support her equal protection claim. "[T]he Equal Protection Clauses of both the Ohio and United States Constitutions protect 'similarly situated' persons from being treated differently by the government." *State v. Ramey*, 2021-Ohio-1522, ¶ 24 (2d Dist.), citing *State v. Murphy*, 2003-Ohio-128, ¶ 8 (5th Dist.). In other words, the law must "operate equally upon persons who are identified in the same class." *State ex rel. Patterson v. Indus. Comm.*, 77 Ohio St.3d 201, 204 (1996); *In re Adoption of Y.E.F.*, 2020-Ohio-6785, ¶ 27.

{¶ 21} In this case, Parisi stated that she wanted to call bank trustees "to testify as to their duties and what services they provide, and why they charge . . . the trustee fees they do." Recognizing that each trust administration is "different and non-reflective of the current trust administration," the trial court found that Parisi's proposed fact witnesses were not relevant to how trustee fees should be awarded in this case and, further, were not necessary because they could not testify as experts. Because Parisi needed to establish that corporate trustees were similarly situated to individual trustees, the trial court reasonably concluded that an expert witness was required and that the individual

trustees, who would testify about their specific unrelated trusts, would not satisfy this evidentiary burden.   We find no abuse of discretion in the court's conclusions.

{¶ 22} Given that the trial court did not abuse its discretion in excluding Parisi's proposed witnesses, the trial court likewise did not abuse its discretion in denying her request for a special process server to secure the attendance of those witnesses. Further, in the absence of any evidence on the constitutional issues, the trial court did not err when it implicitly overruled Parisi's constitutional argument.   *See, e.g., State v. Conard*, 2024-Ohio-1906, ¶ 3 (2d Dist.) ("The court did not address the motion to dismiss, and we presume it was overruled."); *Smith v. Farmer*, 2022-Ohio-4180, ¶ 17 (2d Dist.) (where the trial court failed to rule on a motion to strike and considered the merits of the motion, we presume the motion to strike was overruled); *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 469 (1998) ("[W]hen a trial court fails to rule on a pretrial motion, it may ordinarily be presumed that the court overruled it.").

{¶ 23} Parisi's first and second assignments of error are overruled.

### III. Extraordinary Trustee Fees

{¶ 24} In her third assignment of error, Parisi claims that the trial court "committed prejudicial error when it confused the work of a guardian of the person who makes medical decisions with the Trustee filing for the first time in this Trust a Motion to permit her to pay long term memory care facility bills, as permitted by the express terms of said Testamentary Trust while making a determination as to what work constitutes extraordinary trustee fees, and when it failed to understand the extraordinary fees that the Trustee was requesting."   The crux of Parisi's claim is that the trial court erred in

failing to compensate her for her purported extraordinary services as trustee.

{¶ 25} In its decision denying Parisi's request for extraordinary fees, the trial court indicated that it had reviewed her itemized list of services and concluded that the services rendered from July 21, 2022 through December 3, 2023 were ordinary in the course of a trustee's duties. As characterized by the court, those services consisted of "reviewing financial statements and correspondence with service providers." The trial court further stated:

> The Court notes that "extraordinary" trustee compensation is not typically used when seeking fiduciary fees. R.C. 5807.08 does not mention "extraordinary" trustee compensation. Trustee claims she performed extraordinary services regarding beneficiary's long-term care and other actions not previously performed. Trustee is misguided. Trustee attempts to validate her services as being beneficiary to beneficiary's comfort and care. Such purpose is relegated to the duties of a Guardian of the person, for which Trustee was not.

Parisi takes issue with the trial court's reasoning.

{¶ 26} Jones's will is not in the record before us, but there is no suggestion that it specified the testamentary trustee's compensation. "If the terms of a trust do not specify the trustee's compensation, a trustee is entitled to compensation that is reasonable under the circumstances." R.C. 5807.08(A). Trustee compensation must be set by local rule. Sup.R. 74(A). In the Montgomery County Probate Court, the local rule on trustee compensation provides:

(A) Except as provided in the trust instrument, a trustee may take trustee fees without application or order of the Court, if the fees are less than or equal to the sum of the following:

(1) 5% of income from intangible investments and deposits and installment receipts, such as Social Security or Veterans' Benefits;

(2) 10% of gross rentals from real estate actually managed by the guardian (5% if proceeds of a net lease);

(3) .25% of intangible personal property investments and deposits for each year of the accounting period; and

(4) 1% of distribution of personal property corpus at conclusion of the guardianship.

(B) A computation of fees shall be filed with each account in which credit has been taken for payment of fees. Appendix F to the Local Rules or a similar form shall be used to compute the allowed fees. Existence of the above schedule does not constitute approval by the Court of the reasonableness of the fees taken.

(C) A corporate trustee may take trustee fees in accordance with its published fee schedule provided the fee schedule has been filed with the Court. A corporate trustee shall file its current published fee schedule with the Court on an annual basis. Any amendments to the schedule must be filed before a fee may be taken in accordance with the amended schedule. Fee schedules shall be limited to a maximum 1% fee for all trust estates

with a market value of $75,000.00 or less.

Mont. Co. P.C.R. 74.1. "Additional compensation for extraordinary services may be allowed upon application setting forth an itemized statement of the services rendered and the amount of compensation requested." Sup.R. 74(B).

**{¶ 27}** Sup.R. 74 does not define "extraordinary" services. We note that the specific terms of the document creating the trust (in this case, Jones's will) generally outline the trustee's authority and responsibilities. *Bryan v. Chytil*, 2021-Ohio-4082, ¶ 116 (4th Dist.); *see In re Haggerty's Estate*, 128 N.E.2d 680, 685 (1955). "Extraordinary services" has been understood to mean services that lie "out of and beyond the limit of" a trustee's ordinary duties." *Haggerty's Estate* at 686; *Bryan* at ¶ 120.

**{¶ 28}** Here, Parisi acknowledged that many items in her itemized statement constituted ordinary services as trustee. When asked to identify the extraordinary services she provided, Parisi discussed that the individual holding Roe's power of attorney had asked for trust assets to be used to pay for Roe's long-term care. Although Parisi indicated that she had not dealt with that kind of expense before, the trial court did not abuse its discretion in determining that the payment of those expenses was in line with her ordinary trust duties and did not require any extraordinary time or skills. Parisi also argued that one of the trust beneficiaries wanted an in-kind distribution of trust assets, rather than cash, which necessitated contacting a CPA and other alleged extraordinary work. Upon review of the record, the trial court did not abuse its discretion in concluding that Parisi failed to establish that this service merited extraordinary fees.

{¶ 29} Parisi's third assignment of error is overruled.

### III. Conclusion

{¶ 30} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

HUFFMAN, J. and HANSEMAN, J., concur.