[Cite as *Sunset Estate Properties, L.L.C. v. Lodi*, 2013-Ohio-4973.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

SUNSET ESTATE PROPERTIES, LLC, et al.

      Appellants

      v.

VILLAGE OF LODI, OHIO

      Appellee

C.A. No.     12CA0023-M


APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    11CIV0221

DECISION AND JOURNAL ENTRY

Dated: November 12, 2013

---

CARR, Judge.

{¶1} Appellants, Sunset Estate Properties, LLC ("Sunset") and Meadowview Village, Inc. ("Meadowview"), appeal the judgment of the Medina County Court of Common Pleas that granted summary judgment in favor of appellee, Village of Lodi. This Court reverses and remands.

I.

{¶2} Sunset and Meadowview each own a parcel of land in Lodi on which each operates a mobile home park. Both of the properties are zoned R-2 for residential use, not MH for manufactured homes park use. However, both mobile home parks constitute authorized nonconforming uses of the properties. Each park was licensed for thirty-three (Sunset) and forty-four (Meadowview) mobile home lots or pads, respectively. Twenty-one of Sunset's thirty-three mobile home lots and seventeen of Meadowview's forty-four lots had been vacant for more than six months. Lodi refused to reactivate utilities for those lots for the asserted reason that the

nonconforming use of those particular lots had been abandoned pursuant to the terms of the local zoning code.

{¶3} Section 1280.05(a) of the Lodi Zoning Code ("L.Z.C.") addresses discontinuance or abandonment of a nonconforming use of property and provides:

> Whenever a nonconforming use has been discontinued for a period of six months or more, such discontinuance shall be considered conclusive evidence of an intention to legally abandon the nonconforming use. At the end of the six-month period of abandonment, the nonconforming use shall not be re-established, and any further use shall be in conformity with the provisions of this Zoning Code. In the case of nonconforming mobile homes, their absence or removal from the lot shall constitute discontinuance from the time of absence or removal.

{¶4} There is no provision in the local zoning code that expressly authorizes or addresses the nonconforming use of mobile home lots or pads individually outside the existence of a mobile home park as a whole. The code does not define "lot." Neither does any other provision of the code define or clarify individual mobile homes as nonconforming uses.

{¶5} Because Sunset and Meadowview were unable to lease their mobile home lots which had been vacant for at least six months, they filed a complaint against the Village seeking (1) a declaration that L.Z.C. 1280.05(a) is unconstitutional on its face and as applied to them; (2) a declaration that L.Z.C. 1280.05 fails substantially to advance a legitimate governmental interest and/or is in conflict with state law and, thereby, constitutes a taking for which compensation must be made; (3) compensatory damages for the resulting regulatory taking of their properties; (4) an injunction requiring the Village to institute appropriation proceedings to determine the reasonable compensation for the taking; and (5) a writ of mandamus compelling the Village to institute appropriation proceedings. Lodi answered, denying that the plaintiffs were entitled to relief.

{¶6} Sunset and Meadowview filed a motion for summary judgment, and Lodi responded in opposition. Lodi filed separate, competing motions for summary judgment against Sunset and Meadowview, and the plaintiffs responded in opposition. The trial court granted summary judgment in favor of Lodi and declared that L.Z.C. 1280.05 is not unconstitutional or in conflict with state law. In addition, the court declared that the local ordinance does not amount to a regulatory taking so that appropriation proceedings are not necessary. Sunset and Meadowview filed a timely appeal, raising one assignment of error for review.

II.

**ASSIGNMENT OF ERROR**

THE TRIAL COURT ERRED BY DENYING PLAINTIFFS-APPELLANTS' MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT-APPELLEE'S MOTION FOR SUMMARY JUDGMENT.

{¶7} Sunset and Meadowview argue that the trial court erred by granting summary judgment in favor of Lodi and by denying their motion for summary judgment. This Court agrees in part.

{¶8} This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996). This Court applies the same standard as the trial court, viewing the facts in the case in the light most favorable to the non-moving party and resolving any doubt in favor of the non-moving party. *Viock v. Stowe-Woodward Co.*, 13 Ohio App.3d 7, 12 (6th Dist.1983).

{¶9} Pursuant to Civ.R. 56(C), summary judgment is proper if:

(1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977).

{¶10} To prevail on a motion for summary judgment, the party moving for summary judgment must be able to point to evidentiary materials that show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). Once a moving party satisfies its burden of supporting its motion for summary judgment with sufficient and acceptable evidence pursuant to Civ.R. 56(C), Civ.R. 56(E) provides that the non-moving party may not rest upon the mere allegations or denials of the moving party's pleadings. Rather, the non-moving party has a reciprocal burden of responding by setting forth specific facts, demonstrating that a "genuine triable issue" exists to be litigated for trial. *State ex rel. Zimmerman v. Tompkins*, 75 Ohio St.3d 447, 449 (1996).

{¶11} The non-moving party's reciprocal burden does not arise until after the moving party has met its initial evidentiary burden. To do so, the moving party must set forth evidence of the limited types enumerated in Civ.R. 56(C), specifically, "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact[.]" Civ.R. 56(C) further provides that "[n]o evidence or stipulation may be considered except as stated in this rule."

{¶12} Sunset and Meadowview sought various declarations, including a declaration that L.Z.C. 1280.05(a) is unconstitutional on its face and as applied and that its application denies the entities the viable economic use of their properties and effects a taking for which just compensation is due. In this case, the trial court found that L.Z.C. 1280.05(a) was constitutional because it "is not arbitrary, capricious, unreasonable, or unrelated to the public health, safety, welfare and morals[.]" It premised that finding on the village's authority pursuant to Section 3,

Article XVIII of the Ohio Constitution to enact zoning ordinances as an exercise of its police power. This Court does not dispute a municipality's authority in that regard. *Sheffield v. Rowland*, 87 Ohio St.3d 9, 10 (1999) (noting that "[t]he enactment of zoning ordinances is an exercise of the police power, not an exercise of local self-government."). That authority is not absolute, however. Rather, zoning power "'must be exercised within constitutional limits.'" *Schad v. Borough of Mt. Ephraim*, 452 U.S. 61, 68 (1981), quoting *Moore v. East Cleveland*, 431 U.S. 494, 514 (1977) (Stevens, J., concurring in judgment). After recognizing the village's authority to enact zoning legislation as a function of its exercise of police powers, the trial court cited R.C. 713.15 which states:

> The lawful use of any dwelling, building, or structure and of any land or premises, as existing and lawful at the time of enacting a zoning ordinance or an amendment to the ordinance, may be continued, although such use does not conform with the provisions of such ordinance or amendment, but if any such nonconforming use is voluntarily discontinued for two years or more, or for a period of not less than six months but not more than two years that a municipal corporation otherwise provides by ordinance, any future use of such land shall be in conformity with sections 713.01 to 713.15 of the Revised Code. The legislative authority of a municipal corporation shall provide in any zoning ordinance for the completion, restoration, reconstruction, extension, or substitution of nonconforming uses upon such reasonable terms as are set forth in the zoning ordinance.

Without any analysis, the trial court then summarily concluded that L.Z.C. 1280.05 was constitutional. This Court disagrees and concludes that L.Z.C. 1280.05(a) is unconstitutional on its face.

{¶13} A facial challenge to a zoning ordinance considers whether the ordinance "has no rational relationship to a legitimate governmental purpose and [whether] it may not constitutionally be applied under any circumstances." *Jaylin Investments, Inc. v. Moreland Hills*, 107 Ohio St.3d 339, 2006-Ohio-4, ¶ 11. In a facial challenge, the presumption of constitutionality may be overcome by proof "beyond a fair debate" that the ordinance is

"arbitrary and unreasonable and without substantial relation to the public health, safety, morals, or general welfare of the community." *Id.* at ¶ 13, citing *Goldberg Cos., Inc. v. Richmond Hts. City Council*, 81 Ohio St.3d 207 (1998), syllabus, 214.

{¶14} "Zoning is a valid legislative function of a municipality's police power." *Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926); *see also* Article I, Section 19, Ohio Constitution ("Private property shall ever be held inviolate, but subservient to the public welfare."). The Ohio Supreme Court has held that "the enactment of a comprehensive zoning ordinance, which has a substantial relationship to the public health, safety, morals and the general welfare and which is not unreasonable or arbitrary, is a proper exercise of the police power." *Akron v. Chapman*, 160 Ohio St. 382, 385 (1953). The *Chapman* court further recognized that "[z]oning ordinances contemplate the gradual elimination of nonconforming uses within a zoned area, and where an ordinance accomplishes such a result without depriving a property owner of a vested *property right*, it is generally held to be constitutional." (Emphasis in original) *Id.* at 386 (recognizing the propriety of the taking of private property, in exchange for adequate compensation, for public welfare or use to eradicate slums and blight conditions). The high court, however, held that "[t]he right to continue to use one's property in a lawful business and in a manner which does not constitute a nuisance and which was lawful at the time such business was established is within the protection of Section 1, Article XIV, Amendments, United States Constitution, and Section 16, Article I of the Ohio Constitution, providing that no person shall be deprived of life, liberty or *property* without due process of law." (Emphasis in original) *Id.* at paragraph two of the syllabus. The *Chapman* court reasoned that "property" contemplates not only ownership and possession, but the substantial right of unrestricted use, enjoyment, and disposal. *Id.* at 388. The right to continue a lawful business on the property is subsumed within that right. *Id.*

{¶15} Consequently, in order for a nonconforming use to be extinguished, the use must be voluntarily abandoned. *See Bell v. Rocky River Bd. of Zoning Appeals*, 122 Ohio App.3d 672, 675 (8th Dist.1997) (concluding that, because municipal ordinances may not conflict with a general law, any act of abandonment must be voluntary as mandated by R.C. 713.15). Moreover, the village retains the burden of establishing that a property owner has voluntarily abandoned or discontinued the nonconforming use. *New Richmond v. Painter*, 12th Dist. Clermont No. CA2002-10-080, 2003-Ohio-3871, ¶ 9. "Abandonment requires affirmative proof of the intent to abandon coupled with acts or omissions implementing intent. Non-use alone is insufficient to establish abandonment." (Internal quotations omitted.) *Id*., citing *Davis v. Suggs*, 10 Ohio App.3d 50, 52 (12th Dist.1983). Here, the Lodi ordinance does not distinguish "abandonment" or "discontinuance" for any type of nonconforming use other than relative to mobile homes. Accordingly, while all other property owners and businesses must voluntarily abandon the nonconforming use of the property, mobile home parks alone can be forced into involuntary abandonment simply by removing a mobile home (i.e., a structure that is designed to be moved) from a lot.

{¶16} In April 2000, upon request of the Medina County Prosecutor, the Ohio Attorney General issued an opinion on two questions. The question relevant to the issue raised in this appeal was: "If a local zoning authority has the power to decide what is a nonconforming use, may it consider each lot within a mobile home park to be a nonconforming use, or is it the park as a whole that constitutes the nonconforming use?" 2000 Ohio Atty.Gen.Ops. No. 2000-022, 2000 WL 431368. Then-Attorney General Betty Montgomery opined: "In the absence of a zoning resolution or ordinance to the contrary, the manufactured home park as a whole rather than individual lots within the park shall be considered the nonconforming use." *Id*.

**{¶17}** The Attorney General opined that a "village zoning ordinance governing nonconforming use must be consistent with constitutional limitations, and may not deprive the owner or operator of a manufactured home park of the economically viable use of his land without just compensation." 2000 WL 431368. Although we recognize that the Attorney General's opinion does not constitute binding precedent on this Court, we agree with its reasoning. The Attorney General wrote: "An ordinance or resolution that denies the owner or operator of a manufactured home park the ability to rent a lot within the park to a new home owner after the lot has been vacant for a time longer than that allowed for reestablishment of a nonconforming use, even though the park as a whole is an ongoing concern, would be of questionable validity * * *." *Id*. The opinion premised that conclusion on three reasons: (1) Given the accessibility to the lots and other improvements the park operator is required to provide, as well as remaining utility connections, it is questionable whether the nonconforming use had, in fact, been discontinued. (2) Application of the ordinance or resolution would "likely render any such lot that had been vacated useless for any practical purpose." (3) Application of the ordinance or resolution would likely interfere with the park owner's right to conduct his mobile home park business as a whole. *Id*. This comports with the holding enunciated in *Chapman, supra*.

**{¶18}** This Court shares the concerns of the Attorney General. Because L.Z.C. 1280.05(a) is ambiguous, arbitrary, and unreasonable, we conclude that it is unconstitutional on its face.

**{¶19}** Chapter 1280 of the Lodi zoning code addresses nonconforming uses. L.Z.C. 1280.01 provides: "The lawful use of any building or land existing on the effective date of this Zoning Code may be continued, although such use does not conform with the provisions of this

Zoning Code, provided the conditions of this chapter are met." The limitation of this provision enunciated in L.Z.C. 1280.05(a) presents with some ambiguity, however.

{¶20} This Court has recognized that "[a]n ordinance is ambiguous when it is subject to various interpretations. Specifically, an ambiguity exists if a reasonable person can find different meanings in the ordinance and if good arguments can be made for either of two contrary positions." (Quotations omitted.) *Padrutt v. Peninsula*, 9th Dist. Summit No. 24272, 2009-Ohio-843, ¶ 20. "Because zoning ordinances deprive property owners of certain uses of their property, [] they will not be extended to include limitations by implication." *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142, 152 (2000). The Ohio Supreme Court further explained:

> Zoning ordinances are in derogation of the common law. They deprive a property owner of uses of his land to which he would otherwise be entitled. Therefore, where interpretation is necessary, such enactments are ordinarily construed in favor of the property owner. Furthermore, in determining the legislative intent of an ordinance, the provision to be construed should not be reviewed in isolation. Its meaning should be derived from a reading of the provision taken in the context of the entire ordinance.

(Internal citations omitted.) *Univ. Circle, Inc. v. Cleveland*, 56 Ohio St.2d 180, 184 (1978).

{¶21} There is nothing in Chapter 1280 to indicate that Lodi intended to classify individual mobile homes or mobile home lots as the contemplated nonconforming use. First, unlike R.C. 713.15, L.Z.C. 1280.01 makes no reference to "dwellings." Nevertheless, L.Z.C. 1280.05 mandates discontinuance of the nonconforming use within the context of "nonconforming mobile homes." The code as a whole fails to make any provision, however, for mobile homes or other dwellings as nonconforming uses.

{¶22} Furthermore, L.Z.C. 1280.05(a) premises "discontinuance" of the nonconforming use of a "mobile home" as the mere "absence or removal" of the home from the individual lot.

Accordingly, a mobile home could be removed from one specific lot for purposes of refurbishing or renovation, and immediately replaced with another mobile home on that lot. If the renovation took longer than six months, presumably that mobile home could not be returned to its original lot (or any other) within the mobile home park because it could reasonably be viewed as having lost its status as a valid nonconforming use, despite the fact that another mobile home had remained on the lot from which it was removed during the period of renovation. On the other hand, Lodi appears to have no issue with the presence or absence of specific mobile homes. Rather, it appears to interpret the provision to construe discontinuance of the nonconforming use as the absence of any mobile home on a specific lot, thereby precluding further use of the lot as a nonconforming use.

{¶23} Second, the code does not define "land" or otherwise provide that portions of individual parcels may be zoned differently. L.Z.C. 1280.05(b) imposes a duty on the Zoning Inspector to determine when a nonconforming use has been discontinued for six months and to "notify the *property* owner" of the expiration of the six-month period. The common scheme to delineate property is by parcels as defined by quantifiable geographic measures. Properties are bought and sold as parcels. Taxes are assessed by parcels. Lodi has failed to make any provision in its zoning code to distinguish mobile home parks to allow them to be bought and sold or taxed by individual mobile home lots as opposed to the full parcel. Significantly, the zoning code contains no definition section. Accordingly, there is no authority for construing individual mobile home lots as "land" subject to nonconforming use. *Compare State ex rel. McArthur v. Bd. of Adjustment of Crestwood*, 872 S.W.2d 651, 652 (Mo.App. 1994) (concluding that individual mobile home lots within a mobile home park are not "parcels" or "lots" for purposes of discontinuance of nonconforming use based on the zoning code's definition of those

terms). Accordingly, there is no evidence that the village has enacted any zoning resolution or ordinance to indicate anything other than that the manufactured home park as a whole rather than individual lots within the park shall be considered the nonconforming use.

{¶24} Finally, L.Z.C. 1280.05(a) is drafted to effect an arbitrary result. Zoning ordinances govern the use of land. Mobile home parks constitute business concerns in which portions or units of the property are leased for use by multiple others. The same business model is recognized in apartment buildings, duplexes, multi-office buildings, storage unit complexes, and the like. The ordinance makes no provision for delimiting the nonconforming use of any other type of business in which individual units on the property remain vacant and are not utilized within the scope of the nonconforming use. Only in cases of the absence or removal of mobile homes from portions of the park property does the village attempt to extinguish the nonconforming use of the property on a piecemeal basis. The provision is, therefore, arbitrary and unreasonable in its intent to address a valid public interest which might, when justified, reasonably be addressed by way of a nuisance action. *See Solly v. Toledo*, 7 Ohio St.2d 16 (1966); *see also* R.C. 3767.01(C)(1).

{¶25} Moreover, L.Z.C. 1280.05 negatively impacts the park owners' substantive due process rights. Article I, Section 1, of the Ohio Constitution recognizes that people have "certain inalienable rights, among which are those of enjoying and defending life and liberty, [and] acquiring, possessing, and protecting property * * *." In addition, "the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Washington v. Glucksberg*, 521 U.S. 702, 720-721 (1997), quoting *Moore v. East Cleveland*, 431 U.S. 494, 503 (1977), and

*Palko v. Connecticut*, 302 U.S. 319, 325 (1937). The "liberty" interest protected by the Due Process Clause includes protection against "certain government actions regardless of the fairness of the procedures used to implement them" and "government interference with certain fundamental rights and liberty interests." *Glucksberg* at 719-720, quoting *Collins v. Harker Hts.*, 503 U.S. 115, 125 (1992), and citing *Reno v. Flores*, 507 U.S. 292, 301-302 (1993). "Liberty implies the absence of arbitrary restraint, [although] not immunity from reasonable regulations and prohibitions imposed in the interests of the community." *Chicago, Burlington, & Quincy Ry. Co. v. McGuire*, 219 U.S. 549, 567 (1911).

{¶26} Again, Lodi has attempted to restrain mobile park owners' use of their properties by creating the situation which effectively extinguishes the nonconforming use of the properties on a piecemeal basis. Specifically, by refusing to provide utility services via the utility lines and systems which remain intact, the village has forced the abandonment of various lots within the parks. The parks have not abandoned the nonconforming use of the land, i.e., use as a mobile home park. Rather, the village has caused the abandonment of pieces (the lots) within the whole (the park), systematically squeezing the life out of the parks' businesses in an attempt to slowly extinguish the nonconforming use.

{¶27} Lodi has not argued that the abandonment of one or more, but fewer than all, lots within a mobile home park constitutes a discontinuance of the nonconforming use of the mobile home park as a whole. The village has interpreted L.Z.C. 1280.05, however, to mean that it is the absence of a mobile home on a lot that constitutes abandonment of the lot and, therefore, discontinuance of the nonconforming use. The village has then applied that logic to refuse to provide utilities to those "abandoned" lots. This Court has previously impliedly recognized, however, that it is not the presence or absence of a mobile home on an individual lot that might

determine whether the individual lot has been abandoned. *Lodi v. Ward*, 9th Dist. Medina No. 1918, 1991 WL 38043 (Mar. 20, 1991).[1] Rather, we recognized that it is the presence of intact utility connections which is key. *Id.* In *Ward*, the Wards dba LRTW Mobile Home Park were convicted of violating the village's zoning ordinance for allowing mobile homes on two lots within the mobile home park after the lots had been abandoned for six months or more. This Court reversed their convictions because the village had failed to present any evidence to dispute the Wards' evidence that, notwithstanding the absence of occupied mobile homes on lots 7 and 17, utility connections remained intact at those sites. *Id.* As the issue of whether each individual mobile home lot constituted a nonconforming use was not before us, we did not address that. However, our reasoning in *Ward* lends support to our conclusion that L.Z.C. 1280.05 allows Lodi to arbitrarily slowly extinguish nonconforming uses that the village finds distasteful despite the express provision in L.Z.C. 1280.01 which allows for the continuation of lawful, nonconforming uses.

{¶28} For the reasons articulated above, this Court concludes that L.Z.C. 1280.05 is unconstitutional on its face. Accordingly, the trial court erred by concluding otherwise. Because the determination regarding the constitutionality of the zoning code constitutes the foundation underlying the remaining issues relevant to this case, we decline to address the issues of whether Lodi's actions constitute a taking and what constitutes an appropriate remedy for Lodi's application of its unconstitutional ordinance to the park owners. Accordingly, the assignment of error is sustained inasmuch as it assigns error to the trial court's finding that L.Z.C. 1280.05 is constitutional. We decline to address the remaining issues as they are not yet ripe for review.

---

[1] Article 8, Section 801.4 of the Village of Lodi Zoning Ordinance cited in *Ward* is substantively identical to L.Z.C. 1280.05(a) at issue in this case.

The matter is remanded for a determination regarding the appropriate remedy to which Sunset and Meadowview may be entitled.

### III.

{¶29} Sunset's and Meadowview's assignment of error is sustained in part. The judgment of the Medina County Court of Common Pleas is reversed and the cause remanded for further proceedings consistent with this opinion.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

DONNA J. CARR
FOR THE COURT

MOORE, P. J.
<u>CONCURS IN JUDGMENT ONLY.</u>

BELFANCE, J.
<u>CONCURS IN JUDGMENT ONLY.</u>

<u>APPEARANCES:</u>

JOHN W. MONROE and TRACEY S. MCGURK, Attorneys at Law, for Appellants.

IRVING B. SUGERMAN and JAMES R. RUSSELL, JR., Attorneys at Law, for Appellee.