[Cite as *Smith v. Farmer*, 2022-Ohio-4180.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

| | | |
|---|---|---|
| ELAINE SMITH | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 29524 |
| | : | |
| v. | : | Trial Court Case No. 2021-CV-1991 |
| | : | |
| CAROLYN FARMER | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of November, 2022.

. . . . . . . . . . .

MICHAEL W. SANDNER, Atty. Reg. No. 0064107, 2700 Stratacache Tower, 40 Main Street, Dayton, Ohio 45423
    Attorney for Plaintiff-Appellant

JAMES R. KIRKLAND, Atty. Reg. No. 0009731, 10532 Success Lane, Dayton, Ohio 45458
    Attorney for Defendant-Appellee

. . . . . . . . . . . .

TUCKER, P.J.

{¶ 1} Elaine Smith appeals from the trial court's denial of her motion for summary judgment and its grant of summary judgment in favor of Carolyn Farmer on Smith's claims related to Farmer's receipt of survivor benefits from the Ohio Police and Fire Pension Fund ("OP&F"). For the following reasons, the trial court's judgment will be affirmed.

### I. Facts and Procedural History

{¶ 2} This action concerns whether Smith or Farmer is entitled to survivor benefits from OP&F. The following facts are undisputed.

{¶ 3} Elaine Smith ("Smith") is the former spouse of Larry Smith, a retired police officer. The two married on July 13, 1963. In December 1983, Larry applied for disability retirement benefits from OP&F, then known as the Police and Fireman's Disability and Pension Fund of Ohio. OP&F permits plan members to elect a retirement allowance payable for the retiree's lifetime or, instead, to receive an actuarial equivalent of his retirement allowance in a lesser amount payable for his life and continuing after his death to a surviving designated beneficiary. *See* R.C. 742.3711(A). Larry selected a single life annuity plan, which paid "the highest monthly amount to which the retirant is entitled and terminates at his death." Stipulation, Plt's Ex. 2.

{¶ 4} The Smiths divorced on August 15, 1988, after 25 years of marriage. Section III of the divorce decree, which addressed OP&F benefits, provided that Smith was to receive half of Larry's gross monthly benefits, including any increases. It also provided for Smith to be named the surviving spouse if the pension plan later was modified to provide for a surviving spouse benefit.

{¶ 5} On September 29, 1988, the domestic relations court issued a qualified domestic relations order (QDRO), which restated the terms of the divorce decree regarding OP&F. Soon thereafter, the Ohio Attorney General, on behalf of OP&F, filed a motion in the domestic relations court seeking vacation of the QDRO on the ground that OP&F was expressly exempt from the Employee Retirement Income Security Act of 1974 (ERISA). The domestic relations court agreed, and on November 28, 1988, it filed an entry vacating the QDRO and ordering that Smith receive one-half of Larry's gross monthly benefit as spousal support. The entry did not mention the conditional surviving spouse benefit.

{¶ 6} OP&F did not receive a copy of the 1988 divorce decree. However, it was provided copies of the QDRO and the entry vacating the QDRO. Pursuant to the entry, Smith received her portion of Larry's gross monthly benefit.

{¶ 7} On July 14, 1993, Larry married Carolyn Farmer, and the couple remained married until Larry's death on August 7, 2019, 26 years later. Shortly after Larry died, Farmer submitted a Survivor Benefit Application to OP&F. Farmer received a one-time death benefit of $1,000 from OP&F on August 29, 2019. In addition, pursuant to R.C. 742.37(D), she has been receiving statutory survivor benefits from OP&F since September 1, 2019. Larry's spousal support obligation to Smith terminated with his death.

{¶ 8} On May 18, 2021, Smith filed a complaint against Farmer in common pleas court alleging that Farmer's receipt of survivor benefits from OP&F constituted unjust enrichment and conversion. She also alleged that Larry had breached their contract

(divorce decree) by failing to ensure that she was designated the surviving spouse with OP&F, and that Farmer, as fiduciary of his estate, should be required to comply with the terms of the contract. Smith sought monetary damages, a constructive trust for all past and future survivor benefits paid from OP&F, and both preliminary and permanent injunctions enjoining Farmer from receiving, co-mingling, or disposing of survivor benefits from OP&F.

{¶ 9} The trial court's original deadline for filing motions for summary judgment was March 14, 2022. Upon the joint request of the parties, that deadline was extended to March 28, 2022.

{¶ 10} Smith filed a timely motion for summary judgment on March 25, 2022. She argued that the final judgment and decree of divorce contained an express provision for the handling of OP&F benefits, which required that she be named the alternate payee and that she receive half of the gross benefits, which she did from October 1, 1987 through August 1, 2019. Smith also asserted that the decree further provided that if the pension plan were modified to provide for a surviving spouse, then she, as the alternate payee, was to be designated the surviving spouse upon Larry's death, entitling her to survivor benefits from OP&F. Smith noted that a QDRO had been entered but was vacated because it was inapplicable to OP&F. She stated that, following new legislation in 2002, property divisions concerning OP&F were to be addressed through division of property orders (DPO); no DPO was filed prior to Larry's death. Smith argued that Farmer was unjustly enriched by her receipt of survivor benefits from OP&F and that she (Smith) was entitled to a constructive trust, in accordance with *Fischbach v. Mercuri*, 184

Ohio App.3d 105, 2009-Ohio-4790, 919 N.E.2d 804 (2d Dist.). Finally, Smith asserted that a preliminary injunction should be entered against Farmer, enjoining her from further receipt of OP&F benefits. Smith did not address her conversion or breach of contract claims.

{¶ 11} On April 1, 2022, Farmer filed a combined motion for summary judgment and memorandum in opposition to Smith's motion for summary judgment. Farmer emphasized that while the QDRO specifically mentioned a surviving spouse benefit, the entry vacating the QDRO did not, thus terminating any right Smith had to survivor benefits. Farmer noted that OP&F had received copies of the QDRO and the entry vacating it, but not the divorce decree. Farmer thus argued that she rightfully applied for survivor benefits after Larry's death and thereafter properly received them. Farmer also argued, alternatively, that even if the survivor benefit provision remained in force despite the order vacating the QDRO, the language of the divorce decree did not comply with the statutory mandates of distribution set forth in R.C. 3105.80 et seq., and neither a DPO nor the divorce decree was filed with OP&F. Farmer therefore asserted that Smith's unjust enrichment and constructive trust claims must fail.

{¶ 12} Smith moved to strike Farmer's motion as untimely and requested a status conference. The trial court held a status conference on May 19, but the record does not reflect whether the court addressed the motion to strike. No written entry addressing the motion to strike was filed.

{¶ 13} The trial court subsequently granted Farmer's motion for summary judgment and denied Smith's motion. The trial court stated that it was unclear whether

the entry vacating the QDRO eliminated the surviving spouse provision in the divorce decree, and it noted that Larry had not designated Smith as the beneficiary of his pension benefits. However, the court found no evidence that this failure by Larry displayed an intentional disregard for the terms of the divorce decree. It distinguished *Fischbach* (involving constructive trusts), stating that it "cannot find that the defendant's retaining the survivor benefits she applied for, and which OP&F granted her, was based on misrepresentations, fraud, or deception" by Farmer. The court found no genuine issue of material fact as to Smith's claims of unjust enrichment and constructive trust and entered judgment for Farmer.

{¶ 14} Smith appeals from the trial court's judgment, raising four assignments of error. We will address them in a manner that facilitates our analysis.

## II. Untimely Motion

{¶ 15} In her fourth assignment of error, Smith claims that the trial court erred in granting Farmer's motion for summary judgment because the motion was untimely.

{¶ 16} "Trial courts have inherent power to manage their own dockets and the progress of the proceedings before them." (Citations omitted.) *Roberts v. Kauffman 4 Dayton, Ltd.*, 2d Dist. Montgomery No. 29412, 2022-Ohio-3164, ¶ 11. In reviewing whether a court erred in the implementation of its own scheduling order, we generally apply the abuse of discretion standard. *Id.*; *Pond v. Pond*, 10th Dist. Franklin No. 20AP-262, 2021-Ohio-1708, ¶ 9. Similarly, we review a trial court's denial of a motion to strike an untimely-filed motion for an abuse of discretion. *Cromartie v. Goolsby*, 8th Dist. Cuyahoga No. 93438, 2010-Ohio-2604, ¶ 18. An abuse of discretion occurs when the

trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶ 17}** The trial court did not rule on Smith's motion to strike Farmer's motion for summary judgment and, instead, considered Farmer's motion on the merits. We therefore presume that the motion to strike was overruled. *E.g., State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 469, 692 N.E.2d 198 (1998) ("[W]hen a trial court fails to rule on a pretrial motion, it may ordinarily be presumed that the court overruled it.").

**{¶ 18}** We find no abuse of discretion in the trial court's consideration of Farmer's summary judgment motion. The motion was filed on April 1, 2022, only four days after the court's deadline for filing summary judgment motions, and it also served as Farmer's memorandum in opposition to Smith's summary judgment motion. The untimely filing did not cause any delay to the proceedings. Putting aside the trial court's ruling on Farmer's summary judgment motion, Smith was not prejudiced by the trial court's consideration of Farmer's motion. Moreover, the court's resolution of the motion promoted judicial economy by allowing the matter to be resolved on a dispositive motion when no genuine issues of material fact existed.

**{¶ 19}** Smith's fourth assignment of error is overruled.

### III. The Parties' Cross-Motions for Summary Judgment

**{¶ 20}** In her first, second, and third assignments of error, Smith claims that the trial court erred in denying her motion for summary judgment on her claims for unjust enrichment, the imposition of a constructive trust, and for a preliminary and permanent injunction. She asserts that "the only question before the Court should have been

whether Carolyn Farmer's retention of the benefit was under circumstances where it would be unjust." Smith contends that because Farmer should not have received survivor benefits due to the terms of the divorce decree, the trial court should have imposed a constructive trust and an injunction.

{¶ 21} Civ.R. 56(C) provides that summary judgment may be granted when the moving party demonstrates that (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183, 677 N.E.2d 343 (1997). Appellate review of summary judgment decisions is conducted under the de novo standard. *Miami Twp. Bd. of Trustees v. Powlette*, 2d Dist. Montgomery No. 29369, 2022-Ohio-3459, ¶ 14, citing *Helton v. Scioto Cty. Bd. of Commrs.*, 123 Ohio App.3d 158, 162, 703 N.E.2d 841 (4th Dist.1997). "We review the judgment independently and without deference to the trial court's decision." (Citation omitted.) *Helton* at 162.

{¶ 22} In this case, the underlying facts were undisputed. Farmer is receiving survivor benefits from OP&F that Smith claims she should be receiving in accordance with the divorce decree. The ultimate issue is whether Smith is entitled to those survivor benefits. The trial court did not answer this question.

{¶ 23} In its summary judgment decision, the trial court recognized that the "crucial determination is whether plaintiff's right to survivor benefits established in her divorce from Mr. Smith in the QDRO, was terminated." However, it stated that it was "not in a

position to second-guess the OP&F decision to grant the survivor benefits of Mr. Smith's pension to his surviving spouse at the time of his death rather than his former wife pursuant to the QDRO portion of the 1988 Divorce Decree." The court reasoned:

Whether that survivor benefit remained in place or was eliminated by the OP&F's solicited Entry Vacating the QDRO is not at all clear. The Court would have to infer an intention to deny a significant benefit bargained for in the Domestic Relations Court by its absence from the Entry Vacating the separate QDRO because OP&F was concerned about being garnished or obligated to make support payments through SEA. See OP&F Motion. The Court cannot make such an inference especially on summary judgment.

Instead, the trial court found that Farmer was entitled to summary judgment because any action on her part in receiving the survivor benefits was not the result of ill will, intentional misrepresentations, fraud, or deceit. We agree with the trial court's judgment but employ a different analysis.

**{¶ 24}** As an initial matter, it is irrelevant whether Farmer's receipt of survivor benefits from OP&F was obtained by fraud, misrepresentation, ill will, or the like. None of Smith's claims – unjust enrichment, breach of contract, or conversion – required that the defendant act with wrongful intent. *See TruLogic, Inc. v. Gen. Elec. Co.*, 2d Dist. Greene No. 2021-CA-3, 2021-Ohio-2860, ¶ 69 (unjust enrichment requires (1) a benefit conferred on the defendant by the plaintiff, (2) defendant's knowledge of the benefit, and (3) retention of the benefit would be unjust without payment); *Gevedon v. Decker*, 2d Dist.

Clark No. 2020-CA-21, 2021-Ohio-77, ¶ 30, quoting *Cent. Ohio Med. Textiles v. PSC Metals, Inc.*, 10th Dist. Franklin No. 19AP-167, 2020-Ohio-591, ¶ 25 ("While conversion does not require a showing of wrongful intent to interfere with the owner's property rights, a plaintiff must demonstrate that the defendant intentionally exercised dominion or control over the property."); *Brown v. Fukuvi USA Inc.*, 2d Dist. Montgomery No. 29294, 2022-Ohio-1608, ¶ 17 (elements of a breach of contract claim are the existence of a contract, performance by plaintiff, breach by defendant, and damage or loss to the plaintiff). While a constructive trust is often employed as a remedy for fraud, it may also be imposed without fraud when principles of equity require it. *Dart v. Katz*, 2d Dist. Montgomery No. 28913, 2021-Ohio-1429, ¶ 54.

**{¶ 25}** We therefore begin our analysis with the terms of the domestic relations court's judgments and whether the conditional surviving spouse provision in the divorce decree remains valid.

**A. Validity of the Surviving Spouse Provision in the Divorce Decree**

**{¶ 26}** At the outset, we emphasize that the trial court was permitted to review the domestic relations court's judgments to resolve this matter. *See, e.g., Rimby v. Heritage Union Title Co. Ltd.*, 7th Dist. Columbiana No. 21 CO 0002, 2021-Ohio-3635, ¶ 34 ("[A]fter a final divorce decree is entered, proceedings that may include interpreting a domestic relations decree have been permitted to occur in a division other than the domestic relation division, especially when other parties are involved."); *Khan v. Hughes*, 8th Dist. Cuyahoga No. 102651, 2015-Ohio-4502, ¶ 14 ("Because the domestic relations court had issued a judgment granting the divorce and providing for the division of the property, the

domestic relations court no longer had exclusive jurisdiction over the matter and the common pleas court, which has concurrent jurisdiction, had the power to enforce the order of the domestic relations court.").

{¶ 27} "Ohio law clearly establishes that a judgment may be interpreted if it is ambiguous. If there is good faith confusion over the interpretation to be given to a particular clause of a divorce decree, the trial court in enforcing that decree has the power to hear the matter, clarify the confusion, and resolve the dispute." (Citations omitted.) *Quisenberry v. Quisenberry*, 91 Ohio App.3d 341, 348, 632 N.E.2d 916 (2d Dist.1993). Whether a divorce decree is ambiguous is a question of law, which an appellate court reviews de novo. *Stevens v. Stevens*, 2d Dist. Montgomery No. 27761, 2018-Ohio-2662, ¶ 31. If an ambiguity exists, we review the trial court's clarification for an abuse of discretion. *Id.*

{¶ 28} Here, the domestic relations court issued three relevant judgments: the divorce decree, the QDRO, and the entry vacating the QDRO. We must consider whether there is any ambiguity in those judgments, particularly as it relates to the validity of the surviving spouse provision in the divorce decree.

{¶ 29} The divorce decree set forth the parties' rights to Larry's pension benefits. "Pension or retirement benefits accumulated during the course of a marriage are marital assets subject to property division in a divorce action." *Erb v. Erb*, 75 Ohio St.3d 18, 20, 661 N.E.2d 175 (1996). "After a trial court issues a divorce decree, it lacks jurisdiction to modify or amend the marital property division, including the division of retirement assets, unless the parties expressly consent in writing to the modification. *Colombo v.*

*Chesser*, 10th Dist. Franklin No. 17AP-278, 2018-Ohio-1477, ¶ 9, citing R.C. 3105.171(I) and *Cameron v. Cameron*, 10th Dist. Franklin No. 12AP-349, 2012-Ohio-6258, ¶ 10. The court retains authority to enforce the provisions incorporated into a divorce decree. *Id.* "To effectuate and enforce a divorce decree's division of a retirement asset, a domestic relations court must enter an order such as a QDRO, a division of property order, or similar device. *Cameron* at ¶ 12. As long as the order is consistent with the decree, it is not a modification of the decree, as prohibited by R.C. 3105.171(I). *Id.*, citing *State ex rel. Sullivan v. Ramsey*, 124 Ohio St.3d 355, 2010-Ohio-252, 922 N.E.2d 214, ¶ 19.

{¶ 30} A QDRO is an order that creates or recognizes an alternate payee's rights to receive all or a portion of a plan participant's benefits in an ERISA-qualified retirement plan. *See Hoyt v. Hoyt*, 53 Ohio St.3d 177, 179, 559 N.E.2d 1292 (1990); ERISA, 29 U.S.C 1056(D)(3)(B)(i)(I) and IRS Code, 26 U.S.C. 414(p)(1)(A)(i). The purpose of a QDRO is to implement a trial court's decision concerning how a pension is to be divided incident to divorce or dissolution. *Wilson v. Wilson*, 116 Ohio St.3d 268, 2007-Ohio-6056, 878 N.E.2d 16, ¶ 7. "The QDRO must be drafted to include very specific information with explicit instructions to the plan administrator. It is then the responsibility of the plan administrator to review the order of the trial court and determine whether it constitutes a QDRO." *Ramsey* at ¶ 18.

{¶ 31} Governmental plans, such as state retirement plans, are exempt from ERISA. 29 U.S.C. 1003(b)(1). Accordingly, a QDRO is not the proper vehicle to allocate interests in governmental retirement plan benefits.

{¶ 32} At the time of the Smiths' divorce, Ohio appellate courts and OP&F interpreted R.C. Chapter 742 to preclude the pension plan from withholding funds from a plan benefit except pursuant to a support order or to enforce restitution for certain crimes. *See, e.g., Davis v. Davis*, 131 Ohio App.3d 686, 693, 723 N.E.2d 599 (2d Dist.1998), abrogated by *Erb v. Erb*, 91 Ohio St.3d 503, 747 N.E.2d 230 (2001*)* (former spouse was statutorily precluded by R.C. 742.47 from receiving her interest in her husband's benefits directly from the fund); R.C. 742.461; Ohio Bill Analysis, 2000 H.B.535.   However, in *Erb*, the Ohio Supreme Court rejected this interpretation.   It held that the terms of the pension fund were not violated by a domestic relations order requiring the fund to pay directly to a member's former spouse that portion of the member's monthly benefit that represented the former spouse's property pursuant to a division of marital assets.   *Id.*

{¶ 33} With 2000 H.B. 535, effective January 1, 2002, the Ohio legislature made clear that state retirement systems were permitted to make payments to a participant's former spouse pursuant to a court order for the purpose of dividing a retirement benefit. *See* R.C. 742.462.   The 2002 revisions to R.C. Chapter 3105 set forth the requirements for a division of property order (DPO).   *See* R.C. 3105.82 to R.C. 3105.90.   The total amount to be paid to the alternate payee cannot exceed 50 percent of the plan participant's benefit, R.C. 3105.85, and the alternate payee's rights under the DPO terminate at the earlier of the death of the participant, the death of the alternate payee, or the termination of a benefit paid to a participant.   R.C. 3105.86.   Under R.C. 3105.89, a court has the authority to modify an order under R.C. 3105.171 (dividing martial property) that was effective prior to the effective date of H.B. 535.   However, the modified order

must satisfy the requirements of R.C. 3105.82, which enumerates the information that must be included.

{¶ 34} With this background in mind, we find no ambiguity as to whether the surviving spouse provision in the divorce decree was eliminated by the subsequent entry vacating the QDRO. Under the terms of the divorce decree, Smith was entitled to receive one-half of the benefit that Larry received, plus half of any increases to that benefit, and she did, in fact, receive one-half of his gross monthly benefit until his death in August 2019. Section III(H) of the divorce decree further provided:

> In the event the Plan is modified to provide for a "surviving spouse" upon the death of the Participant [Larry], then in that event, Alternate Payee [Smith] shall be a "surviving spouse" entitled to such benefits, but only to the extent of the benefit pursuant to the Plan. Because [Larry] and [Smith] have been married for more than one (1) year, [Smith] shall be treated as meeting the requirements of [IRS Code 417(d)] for purposes of determining surviving spouse benefits.

The divorce decree required Larry and Smith to execute any documents requested by OP&F to reflect their intent. The parties further agreed that the divorce decree did "not require the Plan to provide any type or form of benefit, or any option, not otherwise provided under the Plan[.]" The decree made clear that the terms were intended to constitute a QDRO.

{¶ 35} The September 29, 1988 QDRO matched the terms of Section III of the divorce decree, and it was promptly provided to OP&F. But, as discussed, OP&F sought

vacation of the QDRO because the plan was exempt from ERISA. The domestic relations court vacated the QDRO on this basis.

{¶ 36} The subsequently-filed entry vacating the QDRO ordered Larry to pay one-half of his gross monthly benefit (plus one-half of any increases) to Smith as spousal support, and it ordered OP&F to withhold that amount from Larry's account and to pay it to Smith through MCSEA. Because the case law at the time precluded OP&F from paying pension benefits directly to a former spouse, converting the pension benefit to spousal support was a mechanism by which the domestic relations court could order OP&F to withhold a portion of Larry's pension benefit. The order was consistent with the intent of the divorce decree regarding Smith's receipt of her portion of Larry's pension benefit during his lifetime and provided Smith the same monthly benefit included in the divorce decree. Although the order did not mention a surviving spouse benefit, we cannot reasonably discern an intent to modify the divorce decree, which the domestic relations court lacked jurisdiction to do. Section III(H) of the divorce decree, addressing Smith's entitlement to be a "surviving spouse" should the plan later be modified, remained valid following the filing of the entry vacating the QDRO.

### B. Smith's Entitlement to Survivor Benefits

{¶ 37} The parties do not discuss whether Section III(H) itself is ambiguous. Because Farmer is receiving statutory surviving spouse benefits under R.C. 742.37(D), Smith claims that she is entitled to those benefits under the divorce decree.

{¶ 38} Statutory survivor benefits existed prior to the Smiths' divorce case. In 1988, when the divorce action was filed, R.C. 742.37(D) provided that "[a] surviving

spouse of a deceased member of the fund shall receive a pension of three hundred ten dollars per month during the natural life of the surviving spouse or until such surviving spouse remarries, except that benefits terminated under this division due to a first remarriage shall resume if the remarriage ceases within two years due to divorce, annulment, dissolution, or death." On September 9, 1988, the surviving spouse pension was increased to $400 per month, *see* 1988 H.B. 389, and that amount has been increased since then. *See, e.g.,* 1999 H.B. 222.

{¶ 39} Although the parties do not discuss the annuity provisions, it is possible that Section III(H) referred to Larry's election under R.C. 742.3711. Prior to the Smiths' divorce, Larry had elected a single life annuity plan, which paid the highest monthly amount but would terminate upon his death. Upon remarriage, Larry could have elected to change his election to receive the actuarial equivalent of his retirement allowance in a lesser amount payable for life and continuing after death to a surviving designated beneficiary. R.C. 742.3711. Section III(H) reasonably could be read to have required Larry to designate Smith as his beneficiary if he later changed his election to one with survivorship benefits.

{¶ 40} In our view, it is irrelevant which survivor benefit is the subject of Section III(H), because Smith cannot prevail, as a matter of law, for either type of survivor benefit. Assuming first that the divorce decree referred to a change in the annuity selection, Smith has no basis for a claim. According to the stipulated documentation from OP&F, Larry never altered his election. Rather, during his lifetime, he received the higher retirement allowance payable during his lifetime, and Smith received her share of those benefits.

Upon his death, those payments ceased and, significantly, neither Smith nor Farmer is receiving benefits as a surviving beneficiary. The divorce decree did not obligate Larry to alter his election and name Smith as his beneficiary. To the contrary, Larry arguably was only required to name Smith as his surviving spouse if he took action to modify the plan, which did not occur.

{¶ 41} Whether Smith is entitled to benefits as a "surviving spouse" for purposes of R.C. 742.37(D), as she now claims, requires an interpretation of the statutes governing OP&F. The interpretation of a statute is a question of law. *State ex rel. Conrath v. LaRose*, Ohio Slip Opinion No. 2022-Ohio-3594, __ N.E.3d __, ¶ 24, citing *Riedel v. Consol. Rail Corp.*, 125 Ohio St.3d 358, 2010-Ohio-1926, 928 N.E.2d 448, ¶ 6. Accordingly, we agree with Smith that neither we nor the trial court should defer to OP&F for a resolution of that question.

{¶ 42} A court's goal when analyzing a statute is to discern and apply "legislative intent [as] manifested in the words of the statute." *Proctor v. Kardassilaris*, 115 Ohio St.3d 71, 2007-Ohio-4838, 873 N.E.2d 872, ¶ 12. As such, if the statutory language is "plain and unambiguous[,] [the statute] must be applied as written without further interpretation." *Id.* But if the statute is ambiguous, then a court must determine the legislature's intent. *Cline v. Ohio Bur. of Motor Vehicles*, 61 Ohio St.3d 93, 96, 573 N.E.2d 77 (1991). A statute "is ambiguous 'if a reasonable person can find different meanings in the [statutory language] and if good arguments can be made for either of two contrary positions.' " *Sunset Estate Properties, L.L.C. v. Lodi*, 9th Dist. Medina No. 12CA23, 2013-Ohio-4973, ¶ 20, quoting *4522 Kenny Rd., L.L.C. v. Columbus Bd. of*

*Zoning Adjustment*, 152 Ohio App.3d 526, 2003-Ohio-1891, 789 N.E.2d 246, ¶ 13 (10th Dist.); *see also Turner v. Hooks*, 152 Ohio St.3d 559, 2018-Ohio-556, 99 N.E.3d 354, ¶ 12. When a statute is ambiguous, "[a]ll statutes pertaining to the same general subject matter must be read in pari materia." *Hughes v. Ohio Bur. of Motor Vehicles*, 79 Ohio St.3d 305, 308, 681 N.E.2d 430 (1997).

{¶ 43} OP&F has provided and continues to provide survivor benefits to Farmer pursuant to R.C. 742.58 and R.C. 742.37. Upon the death of a recipient of pension or disability benefits from OP&F, the member's surviving spouse (or, if there is no surviving spouse, a designated beneficiary) is entitled to receive a lump-sum payment of $1,000. R.C. 742.58. As stated above, R.C. 742.37(D) further provides for a "surviving spouse" to receive a monthly pension. This pension benefit continues during the natural life of the surviving spouse. R.C. 742.37(D)(3).

{¶ 44} R.C. Chapter 742 does not define a "surviving spouse," but by its plain and ordinary meaning, the term does not include a former spouse. A "spouse" commonly means "[o]ne's husband or wife by lawful marriage; a married person." *Black's Law Dictionary* (11th ed. 2019), Spouse. A surviving spouse is "[a] spouse who outlives the other spouse." *Id.*; *see also Goeller v. Lorence*, 9th Dist. Lorain No. 06 CA 8883, 2006-Ohio-5807, ¶ 10. The express purpose of OP&F is to provide disability benefits and pensions to members of the pension fund and their "surviving spouses, children, and dependent parents." R.C. 742.02. It is apparent from the plain language of R.C. Chapter 742 that the statutes do not contemplate more than one "surviving spouse," and none of the 15 sections within R.C. Chapter 742 that address a "surviving spouse"

suggest that the term is intended to include a former spouse.

**{¶ 45}** This interpretation is consistent with the statutory definitions included in other public retirement systems in Ohio. The Public Employees Retirement System, the State Teachers Retirement System, and the Public School Employees Retirement System each define a surviving spouse as "an individual who establishes a valid marriage to a member at the time of the member's death by marriage certificate" or as recognized by a court order. *See* R.C. 145.43(A)(4) (Public Employees Retirement System); R.C. 3307.562(A)(4) (State Teachers Retirement System); R.C. 3309.44(A)(4) (Public School Employees Retirement System).

**{¶ 46}** The divorce decree states that if the plan was modified to provide for a "surviving spouse" upon Larry's death, then Smith, the alternate payee, shall be the surviving spouse entitled to those benefits, to the extent of the benefit pursuant to the plan. But, since statutory surviving spouse benefits under R.C. 742.37(D) were available when the decree was filed, the OP&F plan was not modified to provide for such benefits. Moreover, the parties also agreed that the divorce decree did not require OP&F to provide any type or form of benefit, or any option, not otherwise provided under the plan. Section III(J).

**{¶ 47}** In this case, OP&F provides survivor benefits to a surviving spouse, but there is no statutory authorization to provide those benefits to anyone other than the spouse at the time of the participant's death, in this case Farmer. OP&F is a "creature of statute," whose authority is constricted by "that which is expressly or impliedly conferred by statute." *Erb*, 75 Ohio St.3d at 22, 747 N.E.2d 230, quoting *Dreger v. Pub.*

*Emp. Retirement Sys.*, 34 Ohio St.3d 17, 20-21, 516 N.E.2d 214 (1987). Under the terms of the pension fund, Farmer is statutorily entitled to the statutory survivor benefits.

{¶ 48} Smith argues that Ohio law was amended to allow for division of property orders through H.B. 535, effective January 1, 2002. She asserts that this amendment of the law required Larry to name Smith as his surviving spouse and, despite his obligation to do so, he did not execute any documents to effectuate this designation. We find no support for this assertion. H.B. 535 made no modifications to R.C. 742.37(D). Moreover, a DPO effectuates the division of a plan participant's pension benefits and permits a pension plan to make benefit payments directly to an alternate payee, such as a former spouse. For purposes of the statutes governing DPOs, the term "benefit" includes a periodic payment under a pension, annuity, allowance, or other type of benefit but does not include a survivor benefit. R.C. 3105.80(B). In short, the 2002 amendments to the plan did not modify the plan in a manner that permitted statutory survivor benefits to be paid to a former spouse.

{¶ 49} Smith emphasizes that she has not sought to receive survivor benefits directly from OP&F and that a constructive trust should be imposed on the survivor benefits to effectuate the terms and intent of the divorce decree that she receive those benefits. She relies on *Fischbach v. Mercuri*, 184 Ohio App.3d 105, 2009-Ohio-4790, 919 N.E.2d 804 (2d Dist.), to support her position. Farmer argues that this case is governed, instead, by *Cosby v. Cosby*, 96 Ohio St.3d 228, 2002-Ohio-4170, 773 N.E.2d 516, and similar cases.

{¶ 50} In *Cosby*, the Ohio Supreme Court held that a plan participant's first wife

was not entitled to a constructive trust over survivor benefits that the second wife was receiving from the State Teachers Retirement System (STRS). The divorce decree awarded the first wife a portion of the plan participant's retirement benefits, but he died prior to retirement. The participant had not designated a beneficiary for his survivor benefits, and his surviving spouse therefore was statutorily entitled to the benefits. In concluding that a constructive trust was inappropriate, the supreme court reasoned that STRS was statutorily prohibited from paying benefits prior to retirement, and the plan participant had died prior to retiring. It further stated that STRS benefits were "governed exclusively by statute," and the second wife, as the qualified statutory beneficiary of the account, was receiving survivor benefits. The supreme court stated that the imposition of a constructive trust over a portion of second wife's benefit for the benefit of first wife was "contrary to statutory mandates of STRS." *Id.* at ¶ 19.

{¶ 51} Seven years later, we held that a constructive trust was appropriate in *Fischbach*. Fischbach was the former spouse of Joseph, a participant in STRS; Mercuri was Joseph's spouse at the time of his death. When Fischbach and Joseph divorced, Joseph agreed that he would designate Fischbach as the beneficiary of his survivor annuity and would elect a survivor benefit that would pay her $1,767.50 per month for the remainder of her life. Joseph failed to designate Fischbach as his beneficiary prior to his death, and he had no valid beneficiary designation when he died. As a result, STRS applied the statutory succession under R.C. 3307.562(C), which designated his surviving spouse (Mercuri) as the primary beneficiary. Mercuri began receiving 100 percent of Joseph's survivor benefits. Fischbach sued her, alleging claims of breach of contract,

unjust enrichment, conversion, constructive trust, and seeking an injunction. The trial court rendered summary judgment in favor of Mercuri.

{¶ 52} On review, we reversed the trial court's judgment and found that a constructive trust was the appropriate remedy. Initially, we distinguished *Cosby*, emphasizing that Cosby's first wife had been awarded *retirement* benefits in the divorce decree, but STRS was paying *survivor* benefits to second wife. Second, we noted that a constructive trust would not impact the statutory scheme, because the constructive trust was being imposed on funds in the hands of a party who had been unjustly enriched, not on STRS. Finally, we concluded that, under the facts of the case, Mercuri's receipt of the survivor benefits was inequitable. We reasoned:

> "Prior to retirement, the participant may designate whomever he wishes as his beneficiary as there is not spousal consent required for the election of a beneficiary. R.C. 3307.562(B). This beneficiary designation is only valid prior to retirement." *Romans v. Romans*, 2006-Ohio-6554, ¶ 11. Thus, Joseph could have designated Fischbach as his beneficiary at any time before his death, and that designation would have been effective to establish Fischbach as his beneficiary for survivorship benefits, because Joseph died before retiring. And Joseph was ordered to designate Fischbach as his beneficiary under the divorce decree. Therefore, his failure to do so was wrongful, and Mercuri received, and continues to receive, survivorship benefits as a result of Joseph's wrongful failure to have designated Fischbach as his beneficiary. As a result, Fischbach's receipt

of these benefits is the inequitable result of Joseph's wrongful act (or omission to act), and the imposition of a constructive trust is an appropriate equitable remedy.

*Fischbach*, 184 Ohio App.3d 105, 2009-Ohio-4790, 919 N.E.2d 804, at ¶ 63.

{¶ 53} In this case, the recipient of statutory survivor benefits is determined solely by the statutory language.   Under the plain language of R.C. 742.37(D) and R.C. 742.58, Farmer was entitled to those survivor benefits as the surviving spouse.   Unlike the plan participant in *Fischbach*, who could have taken action to designate his former spouse as a beneficiary in accordance with the divorce decree but failed to do so, Larry had no ability to designate Smith as his surviving spouse under R.C. 742.37(D) or R.C. 742.58. Contrary to Smith's assertion, there was no paperwork that Larry could have submitted to designate her as the surviving spouse for purposes of surviving spouse benefits.

{¶ 54} We find this case more analogous to *Cosby*, in which the supreme court stated that it was not proper to impose a constructive trust when the trust would result in the reallocation of pension funds in a manner contrary to the statutory mandates of the public pension plan.   The divorce decree cannot provide Smith with statutory survivor benefits contrary to the mandates of R.C. 742.37(D), nor can a constructive trust be used to circumvent the fact that R.C. Chapter 742 provides statutory survivor benefits to Farmer as the surviving spouse.

{¶ 55} Accordingly, we conclude that Farmer's receipt of survivor spouse benefits from OP&F is not inequitable as a matter of law. and Smith has no claim over those funds. The trial court did not err in granting summary judgment to Farmer and denying Smith's

motion for summary judgment. Smith's first, second, and third assignments of error are overruled.

### IV. Conclusion

{¶ 56} The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and LEWIS, J., concur.

Copies sent to:

Michael W. Sandner
James R. Kirkland
Hon. Richard S. Skelton